(Reap. Dec. 9173)

DANIEL F. YOUNG, INC. (PERFECTION IMPORT & EXPORT CO.) ET AL. } *v.* UNITED STATES

Entry No. 41184, etc.

(Decided June 20, 1958)

*Jordan & Klingaman* (*Jacob L. Klingaman* of counsel) for the plaintiffs.

*George Cochran Doub*, Assistant Attorney General (*Daniel I. Auster*, trial attorney), for the defendant.

WILSON, Judge: These are appeals for reappraisement of the value of certain merchandise consisting of lenses, wool gloves, binoculars, and opera glasses. The items in question were exported from Japan between January 13, 1948, and July 22, 1949, with the exception of the merchandise involved in reappraisement number 220392–A, which was exported on April 30, 1951, and that involved in reappraisement number 225964–A, which was exported on May 2, 1952.

Plaintiffs, in these appeals, contest the action of the appraiser in including in the appraised values of the merchandise (1) certain amounts alleged to have been paid by the plaintiffs as buying commissions to an agent in Japan, and (2) certain expenses incurred in bringing the merchandise from the manufacturers' places of business to seaport and landing same on board vessel, which items are listed on the invoices herein as:

(a) Inland freight to shipping port
(b) Insurance premium from go down to on board vessel
(c) Storage
(d) Hauling and lighterage, and
(e) Petties

The charges noted in (2) above were entered under so-called duress under the provisions of section 503 (b) of the Tariff Act of 1930, as in force and effect at the time of exportation.

Counsel for the importers herein concede that all of the invoices covering the involved merchandise show f. o. b. unit prices, with certain charges included in the *per se* unit prices, with the exception of the merchandise covered by reappraisement numbers 170394–A, 171581–A, 172166–A, 172258–A, 173655–A, 171582–A, 173656–A, and 173659–A, as to which cases the official papers show charges

extra, and also that the merchandise covered thereby was exported in the name of the Japanese Board of Trade (R. 13–14), which it appears was known as Boeki Cho. The merchandise represented by the latter appeals was covered by so-called "JX" contracts (defendant's exhibit A), showing prices in United States dollars and delivery f. o. b. ocean vessel, Japanese port. The contracts in question indicate approval by the Japanese Board of Trade and by "SCAP," the American agency which exercised control over prices in Japan.

The question here for determination has been previously passed upon in *Dan Brechner & Co. et al.* v. *United States*, 39 Cust. Ct. 607, Reap. Dec. 8949, and *Dan Brechner & Company* v. *United States*, 39 Cust. Ct. 651, Reap. Dec. 8994. It may be observed that appeals in the above-decided cases are presently before the second division of this court. It appears that there is no substantial difference in either fact or law between those cases and the appeals here under consideration.

In the *Brechner* case, Reap. Dec. 8994, *supra*, the record established that the freely offered price to the plaintiff therein and to other purchasers for the merchandise was on an f. o. b. Yokohama, or other seaport basis, the unit price per article and total invoice price having included therein certain alleged freight and other charges. Specifically there was nothing in the record therein to show that, during the period involved, the goods could be, or, in fact, were ever purchased at the invoice price, less freight and other charges. The court thereupon held that the inland freight and other charges were correctly included by the appraiser in computing statutory export value. Of like tenor was the holding of the court in Reap. Dec. 8949, *supra*. In so holding, the court, in the *Brechner* cases, *supra*, cited as controlling the case of *United States* v. *Paul A. Straub & Co., Inc.*, 41 C. C. P. A. (Customs) 209, C. A. D. 553, wherein our appellate court held that where a quantity of china ornaments, appraised on the basis of export value (concededly proper), was freely offered for sale to all purchasers in the principal market of country of exportation, at time of exportation, at a single price, i. e., f. o. b. port of exportation, which price included therein an item of inland freight cost to said port, and no sales or offers for sale were ever made on an at-factory basis for delivery in principal market, inland freight charges were correctly included in computing statutory export value.

The only witness called at the trial herein was Louis S. Josephson, sole owner of Perfection Import & Export Co., importer of the merchandise here involved Mr. Josephson testified that, in connection with the purchase of the involved goods and other items made by his concern, it was his custom to employ an agent to assist him in procur-

ing merchandise, and that for such service a commission of 5 per centum "figured on the first cost of the merchandise, and then added to the invoice," was paid. He stated that, during the period here involved, he had employed as his regular commissionaire, Shinyei Kiito Kaisha, whose department manager was Mr. J. Okada. In this connection, the witness testified: That Okada was not a manufacturer, but a commissionaire who is paid 5 per centum of what he pays the people from whom he buys the goods; that said commissionaire employs people to inspect the merchandise on his premises before shipment; that payment for such services was not paid out of the agent's 5 per centum, but the amount is put on the bill as charges; that the agent pays the costs for inland freight, warehouse, cartage, petties, and other charges. Mr. Josephson further testified that manufacturers of lenses, which are involved in most of the invoices herein, are located throughout Japan, in places such as Osaka, Nagoya, and Tokyo, from which places he purchased such goods and that there probably are factories also located in Yokohama; that his agent was not instructed to purchase from a particular manufacturer, unless the manufacturer made the kind of goods he wanted; that purchases were made wherever favorable. The witness then testified that he paid for the involved goods the total prices as shown on the invoices.

On cross-examination, Mr. Josephson testified that no manufacturers are actually indicated in any of the official papers before the court (R. 15); that he sent no mail or other correspondence regarding the involved purchases to any of the manufacturers, but that he sent orders—"willing to buy orders"—to his agent. It was conceded by counsel for the importer that plaintiffs' witness had no personal knowledge of the prices at which any of the manufacturers freely offered for sale such or similar merchandise during the period here involved, in the ordinary course of trade and in the usual wholesale quantities, and plaintiffs' witness agreed that this applied also to home consumption sales.

Plaintiffs further introduced in evidence an affidavit of Mr. J. Okada, dated November 28, 1956 (plaintiffs' exhibit 1), reciting in effect that, during the period here involved, he had acted as agent for the importer and that for services performed in connection with the purchase of the merchandise, said agent was to receive a commission of 5 per centum. The record, however, contains no proof with respect to the alleged payments for commissions.

The record in this case presents, in my opinion, a factual situation like that which obtained in the *Brechner* cases, *supra*. Here, as there, it appears that the freely offered price to the plaintiffs for the involved merchandise was on an f. o. b. seaport basis, and that inland freight

and other charges were included in the *per se* unit price (R. 12–13). Plaintiffs have failed to establish that the merchandise could be, or, in fact, ever was purchased at the invoice prices, less freight and other charges. Specifically, the importer has not shown that the goods were sold for delivery at the factory, less charges, nor has the price for the goods at any factory been established. Further, there is no proof in the record of any payment in any sum, in any currency, by any agent to any named manufacturer, nor does the record show the payment of any one of the alleged f. o. b. charges to any person, firm, or corporation. Moreover, where the so-called agent appears as the shipper of the goods, the declaration under oath appearing on the consular invoices shows the alleged agent to be the "seller." In such cases, the alleged commissions are in fact profit of the seller and, therefore, may not be considered as deductible items. *United States* v. *Ferdinand Rice et al.*, 4 Cust. Ct. 813, Reap. Dec. 4886.

I am of opinion and hold that the decision of our appellate court in the *Straub* case, *supra*, is decisive of the issue herein and, for the reasons there stated, in addition to those expressed in the *Brechner* cases, *supra*, the inland freight and other charges here under consideration were correctly included by the appraiser in computing statutory export value.

I find as matter of fact:

(1) That the merchandise in question consists of lenses, wool gloves, and other items exported from Japan.

(2) That, at or about the dates of exportation of the involved merchandise, such or similar merchandise was not freely offered for sale for home consumption in Japan.

(3) That, at or about the dates of exportation of the involved merchandise, such or similar merchandise was freely offered for sale in Japan for exportation to the United States.

(4) That, at or about the dates of exportation herein, all sales and offers for sale of such or similar merchandise were made in various markets in Japan on an f. o. b. Japanese seaport basis at unit *per se* invoiced prices for export to the United States, as appraised, and that no sales or offers for sale were made on an ex-factory basis, at invoice prices, less inland freight and other charges.

I conclude as matters of law:

1. That export value, as that value is defined in section 402 (d) of the Tariff Act of 1930, is the proper basis of value for the merchandise involved herein, and

2. That such value in each case is represented by the unit *per se* invoiced price for each item, f. o. b. Japanese seaport, without deduction as appraised.

Judgment will be rendered accordingly.