(R.D. 11468)

PARK AVENUE IMPORTS *v.* UNITED STATES

Entry Nos. 4401 ; 1616.

(Decided January 22, 1968)

*Sharretts, Paley, Carter & Blauvelt* (*Charles P. Deem* of counsel) for the plaintiff.

*Edwin L. Weisl, Jr.,* Assistant Attorney General (*Sheila N. Ziff,* trial attorney), for the defendant.

WILSON, Judge: These consolidated appeals for reappraisement consist of importations of boys' flannel lined pants exported from Kobe, Japan, on July 25, 1963, in R64/3814, and of boys' cotton pants exported from Hong Kong on June 9, 1963, in R64/12650. The official papers, which are in evidence, indicate that in both appeals the merchandise was entered at the respective invoiced f.o.b. Kobe or Hong Kong prices, which are claimed by plaintiff to be the correct export values. In both cases, appraisement was made at said invoiced f.o.b. prices, *plus* 3½ percent, net, packed, which the Government claims are the correct export values.

The plaintiff contends that the 3½ percent additions by the appraiser represent *bona fide* buying commissions which are not properly a part of export value. The defendant contends that said 3½ percent has not been established as a *bona fide* buying commission.

By written stipulation, counsel agree "that the 3½% added by the appraiser to the entered values in each case herein represents the amount of an alleged buying commission as shown on the Cohen Sons Trading Co. invoices accompanying each entry, and that the issue herein is limited to whether or not said amount represents a bona fide buying commission."

In statements filed by respective counsel under rule 15 of this court, it is agreed that export value as defined in section 402(b) of the Tariff Act of 1930, as amended by the Customs Simplification Act of 1956, 91 Treas. Dec. 295, T.D. 54165, is the proper basis for appraisement. Export value as so defined and amended is as follows:

(b) EXPORT VALUE.—For the purposes of this section, the export value of imported merchandise shall be the price, at the time of exportation to the United States of the merchandise undergoing appraisement, at which such or similar merchandise is freely sold or, in the absence of sales, offered for sale in the principal markets of the country of exportation, in the usual wholesale quantities and in the ordinary course of trade, for exportation to the United States, plus, when not included in such price, the cost of all containers and coverings of whatever nature and all other expenses incidental to placing the merchandise in condition, packed ready for shipment to the United States.

It is not disputed that the imported merchandise is not on the final list published in 93 Treas. Dec. 14, T.D. 54521.

"Whether a buying commission is *bona fide* depends upon the facts of each particular case." *United States* v. *Nelson Bead Co.*, 42 CCPA 175, 183, C.A.D. 590, citing *United States* v. *Bauer et al.*, 3 Ct. Cust. Appls. 343 (see 345), T.D. 32627. See also *Haddad & Sons, Inc.* v. *United States*, 53 Cust. Ct. 423, 425, Reap. Dec. 10825.

The buying commissions of a *bona fide* purchasing agent are excluded from the export value of merchandise. *United States* v. *Gitkin Co.*, 46 Cust. Ct. 788, 792, A.R.D. 132, citing *Stein* v. *United States*, 1 Ct. Cust. Appls. 36, T.D. 31007; *Bauer* case, *supra; United States* v. *Case & Co., Inc.*, 13 Ct. Cust. Appls. 122, T.D. 40958. See also *Haddad & Sons, Inc.* v. *United States, supra; Shalom & Co.* v. *United States*, 56 Cust. Ct. 625, 627, Reap. Dec. 11141, and *Fine Arts Bag Co.* v. *United States*, 57 Cust. Ct. 625, 633, R.D. 11224.

The plaintiff has the burden of showing that the invoiced buying commissions are those of a *bona fide* purchasing agent. Was that burden adequately discharged?

The invoice in R64/3814 of Mitsui & Co., Ltd., Kobe, Japan, shows an f.o.b. Kobe price of $13.30 per dozen for 160 dozen boys' flannel lined pants, total $2,128, consigned to the plaintiff "through Cohen Sons Trading Co., Ltd.," which price includes actual charges for outside packing, packing charges, inland freight from factory to Kobe

by truck, storage, insurance premium from factory to on board, hauling and lighterage, aggregating $98.45. The manufacturer of the merchandise is stated to be "F–One Ltd., Osaka, Japan." A separate invoice shown as being from "Cohen Sons Trading Co. Ltd." of Hong Kong refers to the Mitsui invoice and states "3½% Buying Commission on above U.S. $74.48."

The invoice in R64/12650 of Manhattan Garments, Ltd., Hong Kong, shows an f.o.b. Hong Kong price of $10.25 per dozen for 241 dozen boys' cotton pants, total $2,470.25, consigned to the plaintiff "through Cohen Sons Trading Co., Ltd.," which price includes inland freight from factory to waterfront, domestic insurance premium from factory to on board, hauling and lighterage, aggregating $24.10. A separate invoice shown as being from "Cohen Sons Trading Co., Ltd." of Hong Kong refers to the Manhattan Garments, Ltd., invoice and states "3½% Buying Commission on above U.S. $86.46."

Leonard I. Cohen, called as a witness by the plaintiff, testified in substance as follows: He served as general manager and was in complete control of the operations of the plaintiff importer while simultaneously acting as supervisor of the affairs of Cohen Sons. The latter allegedly was at the same time employed as purchasing agent for plaintiff. It also appears from Mr. Cohen's testimony that through interlocking interests the plaintiff and Cohen Sons, the alleged buying agent, were under the same ownership (R. 12–14).

The witness was familiar with the transactions here involved and testified that the amount claimed as paid as a buying commission was in fact paid as such compensation. He states that prior to January 1963, when a written agreement, part of exhibit 3, was signed, Cohen Sons bought goods the same as the ones here involved and sold them to the plaintiff without the payment of any buying commission. After the execution of the written contract, a buying commission was paid although the relationship between the plaintiff and Cohen Sons remained unchanged and Mr. Cohen's relationship with said firms was the same. The witness stated the reason for the alleged change was as follows:

The reason for the change was the question of the economics involved. Park Avenue Imports wasn't making very much money and it had to do something to reduce its cost of purchasing merchandise. And at the same time this question came up with customs on the dutiable. Customs was taking the position on this direct sale that the purchase price that was paid to Cohen Sons was the dutiable value rather than the original purchase price from, let's say, Mitsui or Manhattan. And, as we have said, the firms were inter-related closely. And we negotiated a change of our arrangement with Cohen Sons. [R. 30.]

Throughout his testimony, Mr. Cohen was very frank in admitting the interrelated interests of the parties and the manner of and reasons for the operations involved.

It should be noted that the plaintiff was the sole United States purchaser through Cohen Sons. Furthermore, there is lacking in Mr. Cohen's testimony any evidence as to how and when the purchase price of the imported merchandise and the alleged buying commission were paid. Mr. Cohen admitted that he was confused when he was questioned as to the financial details of transactions between plaintiff and Cohen Sons subsequent to January 1963. This seems to be too extraordinary and improbable to admit of belief, especially in the light of his other testimony. When asked whether the credit of Cohen Sons Trading Co., Ltd., was utilized subsequent to entering into the agreement with plaintiff in 1963, he testified, R. 34:

I am sorry, I can't answer that honestly and fully because I don't recall that there were instances of credit being used. I would have to check and it is perhaps, to me, due to my duality that I work for both firms.

Mr. Cohen also testified, R. 35, that he was sorry he could not recall how Park Avenue Imports paid, or the manner in which it paid, for the merchandise involved in these two appeals. In view of his employment as general manager for plaintiff and as president of Cohen Sons, and as the writer of exhibit A, it seems rather inexcusable to claim that he cannot answer and does not recall details of payment for the merchandise under consideration. Plaintiff did not offer any correspondence, orders, confirmation of orders, letters of credit, or checks which could show the true nature of the involved transactions. Though the invoices before the court allege sales by Mitsui and Manhattan Garments to plaintiff, it is not clear from the record whether plaintiff or Cohen Sons actually paid the amount invoiced to either Mitsui or Manhattan Garments. Nor does the record show how, if at all, Cohen Sons were paid the alleged amounts stated in their invoices as buying commission. Nor is there any evidence in Mr. Cohen's testimony as to the ordinary course of trade applying to the imported merchandise in the principal markets in which the involved goods were purchased for exportation to the United States.

It would appear from the testimony given by Leonard I. Cohen and the affidavits of Ernest K. Stein that plaintiff contends, and indeed, it is so argued in plaintiff's brief, that, in spite of the practical common ownership of the plaintiff importer and the alleged buying agent, the parties acted in good faith and that the plaintiff is entitled to have its alleged buying commission paid to Cohen Sons deducted from the appraised value. Under some circumstances this might be

true. See *United States* v. *Citroen*, 223 U.S. 407, 415 (1912), in which the Court stated:

\* \* \* This, of course, does not mean that a prescribed rate of duty can be escaped by resort to disguise or artifice. When it is found that the article imported is in fact the article described in a particular paragraph of the tariff act, an effort to make it appear otherwise is simply a fraud on the revenue, and cannot be permitted to succeed. *Falk* v. *Robertson*, 137 U.S. 225, 232 [34 L. ed. 645, 647, 11 Sup. Ct. Rep. 41]. But when the article imported is not the article described as dutiable at a specified rate, it does not become dutiable under the description because it has been manufactured or prepared for the express purpose of being imported at a lower rate. *Merritt* v. *Welsh*, 104 U.S. 694, 704 [26 L. ed. 896, 899]; *Seeberger* v. *Farwell*, 139 U.S. 608, 611 [35 L. ed. 297, 298, 11 Sup. Ct. Rep. 650]. *"So long as no deception is practiced, so long as the goods are truly invoiced and freely and honestly exposed to the officers of customs for their examination, no fraud is committed, no penalty is incurred."* *Merritt* v. *Welsh*, *supra.* \* \* \* [Emphasis supplied.]

See also *In re Blumenthal et al.*, 51 Fed. 76, 78 (Circuit Court S.D., N.Y., 1892); *United States* v. *International Forwarding Co.*, 15 Ct. Cust. Appls. 198, 201, T.D. 42235.

However, such admissions, in and of themselves, cannot persuade the court that the *bona fides* lay therein. Other evidentiary facts, or the lack of them, require consideration.

"The *bona fides* of a commission may well be questioned when the so-called *commissionaire and the manufacturer* are under common control of members of the same family." [Emphasis supplied.] *Fine Arts Bag Co.* v. *United States*, 57 Cust. Ct. 625, R.D. 11224. In the instant case, not only are the so-called commissionaire, Cohen Sons, and the manufacturer, whether F–One or Manhattan Garments, under some common control, but also the plaintiff itself and the alleged buying agent were under such common control. The *bona fides* of the alleged buying agency, Cohen Sons, are under these circumstances properly subject to close scrutiny.

However, although the court is of the opinion that it might well find against the plaintiff on the evidence introduced on the identity of interests between the plaintiff and the alleged buying agent, and, in the absence of another element in the case, might so find, it need not base its decision solely on the undisputed facts concerning these relationships. There is a really fatal defect in another necessary element of the plaintiff's case.

As part of its essential proof, the plaintiff had the burden of establishing that the involved transactions conformed to the requirements of export value as being in the ordinary course of trade. The only testimony offered in support of this proposition is contained in the

three affidavits of Mr. Stein. In his first sworn statement (exhibit 1), Mr. Stein alleges as follows:

Therefore, I am thoroughly familiar with the prices and terms of sale at which the manufacturers and sellers of the merchandise we have purchased on behalf of Park Avenue Imports were offering their merchandise for sale from January through August 1963. In addition, Mitsui & Co. Ltd., and Manhattan Garments Co. Ltd., freely offered for sale and sold merchandise identical to or so substantially similar as to be commercially interchangeable with the merchandise described above, at the same prices as which Park Avenue Imports instructed us to pay on their behalf.

The only basis for the bare conclusions set forth in the foregoing statement is the following contained in the same exhibit 1:

During the period from January through August 1963, at the request of our principal, Park Avenue Imports, we purchased the following merchandise from Mitsui & Co. Ltd., Kobe, Japan, for the account of Park Avenue Imports:

Then follows a list of merchandise purchased. In another paragraph in the same affidavit the affiant alleges:

At the request of Park Avenue Imports, during the period from January through August of 1963, we also purchased cotton trousers for their account from Manhattan Garments Co. Ltd., a Hong Kong manufacturer.

In exhibit 1, no statements are made as to specific sales to others than the plaintiff herein, and there are no statements as to offers of sale made to any others in the ordinary course of trade at definite prices.

In Mr. Stein's second affidavit (exhibit 2), he makes the following allegations:

Mitsui & Company freely offered for sale and sold merchandise identical to or so substantially similar as to be commercially interchangeable with the above listed merchandise, to other purchasers for exportation to the United States. This merchandise was sold or offered for sale by Mitsui & Company at the same prices which Park Avenue Imports instructed us to pay on their behalf.

I am thoroughly familiar with all of the prices, conditions, and terms of sale at which the manufacturers and sellers of the merchandise we have purchased on behalf of Park Avenue Imports were offering their merchandise for sale from January through August 1963. There were no restrictions as to resale price, use, or other disposition of the merchandise described in this affidavit.

It will be observed that the foregoing statements are unsupported conclusions without any specific sales or offers for sale being included.

Mr. Stein's third affidavit (exhibit 3) gives no additional facts. There is nothing whatever in the testimony of Leonard I. Cohen in

support of the claim that the transactions involved herein were in the ordinary course of trade. Not a single sale to United States purchasers by either Mitsui or Manhattan Garments, to other than plaintiff, is of record. Nor is there any evidence adduced through employees or others connected with those two firms. Accordingly, the statements by Mr. Stein must be considered as mere conclusions of ultimate facts as they are wholly unsupported by documents showing actual offers for sale or sales originating from either Mitsui or Manhattan Garments. Therefore, the statements are not worthy of favorable evidentiary evaluation. *Brooks Paper Company* v. *United States*, 40 CCPA 38, C.A.D. 495; *Kobe Import Co.* v. *United States*, 42 CCPA 194, C.A.D. 593.

There is nothing in the evidence to justify the court in finding that the transactions here involved were conducted in the ordinary course of trade in the principal markets in which the imported merchandise was purchased. This constitutes a fatal failure of proof in the plaintiff's case.

While the appraisements herein are expressed in terms of the invoice unit prices, plus $3\frac{1}{2}$ percent, it is not disputed that the appraisements are deemed separable. The issue is specifically limited to the said $3\frac{1}{2}$ percent addition. *United States* v. *Supreme Merchandise Company*, 48 Cust. Ct. 714, A.R.D. 145.

On the record herein, as amply reviewed and considered, the court is unable to hold that said $3\frac{1}{2}$ percent addition is in fact a *bona fide* buying commission. The importer has failed to make out a *prima facie* case by satisfactory evidence which would overcome the presumptively correct appraised value. 28 U.S.C., section 2633; *I. Arditi* v. *United States*, 50 CCPA 49, 51, C.A.D. 818, and cases cited therein.

On the record herein, I find the following facts:

1. That the imported merchandise consists of boys' flannel lined pants exported from Kobe, Japan, on July 25, 1963, in R64/3814, and of boys' cotton pants exported from Hong Kong on June 9, 1963, in R64/12650.

2. This merchandise is not enumerated on the final list published in 93 Treas. Dec. 14, T.D. 54521. Counsel agree that export value which is the basis of appraisement herein, as defined in section 402(b) of the Tariff Act of 1930, as amended by the Customs Simplification Act of 1956, 91 Treas. Dec. 295, T.D. 54165, is the proper basis for appraisement.

3. By stipulation of counsel, the issue is limited to whether or not a $3\frac{1}{2}$ percent addition by the appraiser to the entered values, which are the invoiced unit prices, represents a *bona fide* buying commission.

4. The controlling interests in plaintiff and in Cohen Sons Trading Co., Ltd., its alleged buying agent, are owned by the same parties.

5. Cohen Sons Trading Co., Ltd., owned shares in the firm of Sanbutu changed to F–One, the manufacturer of the merchandise in R64/3814 and also owned 28¾ percent of the shares of Manhattan Garments, Ltd., the manufacturer of the merchandise in R64/12650, from January 1963 to May 27, 1963.

6. Leonard I. Cohen was the general manager of plaintiff and also the president of Cohen Sons Trading Co., Ltd., and he "run[s]" both firms.

7. Plaintiff was the sole United States importer of merchandise exported by or through Cohen Sons Trading Co., Ltd.

8. There is no satisfactory evidence, oral or documentary, indicating the manner in which plaintiff paid for the imported merchandise or paid for the alleged buying commissions.

9. The evidence does not satisfactorily establish that the 3½ percent added by the appraiser to the invoiced unit prices is in fact a *bona fide* buying commission.

10. There is no competent evidence in the record to show that the transactions here involved were conducted in the ordinary course of trade as defined in section 402(b) of the Tariff Act of 1930, as amended, *supra.*

I conclude as matters of law:

1. Plaintiff has failed to overcome the presumptively correct appraised values.

2. The so-called 3½ percent commission is not a *bona fide* buying commission.

3. The importations were not purchased in the ordinary course of trade in the principal markets for said merchandise.

4. That export value, as defined in section 402(b) of the Tariff Act of 1930, as amended by the Customs Simplification Act of 1956, 91 Treas. Dec. 295, T.D. 54165, is the proper basis for determination of the value of the imported merchandise.

5. That such export value is represented by the appraised value in each appeal for reappraisement herein under consideration.

Judgment will be entered accordingly.