**A & A TRADING CORP.**

**v.**

**UNITED STATES.**

**R.D. 11619; Reappraisement R63/5756.**

United States Customs Court.
Jan. 30, 1969.

Rode & Qualey, New York City (Ellsworth F. Qualey, New York City, of counsel), for plaintiff.

Carl Eardley, Acting Asst. Atty. Gen. (Sheila N. Ziff and Herbert P. Larsen, New York City, trial attorneys), for defendant.

RAO, Chief Judge.

This appeal for reappraisement involves various kinds of electronic components imported from Japan and entered at the port of Boston. Such merchandise does not appear on the Final List promulgated by the Secretary of the Treasury, 93 Treas.Dec. 14, T.D. 54521. The merchandise was appraised on the basis of export value as that value is defined in section 402(b) of the Tariff Act of 1930, as amended by the Customs Simplification Act of 1956, at the invoice unit values plus the items marked "X" (inland freight, shipping charges and commissions) plus packing. The

parties are in agreement that export value is the proper basis of appraisement, but plaintiff claims that the correct dutiable export value does not include the commission which is alleged to be a *bona fide* buying commission. Plaintiff contends, and defendant agrees, that the appraisement is separable and that it may challenge the inclusion of the item marked "buying commission" while relying on the presumption of correctness of every other element of the appraisement.

At the trial, plaintiff offered in evidence an affidavit of H. Takeda, managing director of A & A Japan, Ltd. of Tokyo, Japan (exhibit 1). Affiant states therein:

> * * * that he is thoroughly familiar with all phases of the business; that A & A Japan, Ltd. is and has been for 11 years past the buying agent of A & A Trading Corporation of New York, N. Y. in Japan; that the terms of the arrangement are contained in the contract dated May 1, 1961 a copy of which is attached to and made part of this affidavit; that under this contract, and continuously from the date of this contract to the present time, A & A Japan, Ltd. furnishes to A & A Trading Corporation information as to the prices for merchandise available in Japan for which A & A Trading Corporation has asked for quotations and places all orders for merchandise on specific instructions from A & A Trading Corporation to do so; that A & A Japan, Ltd. inspects the merchandise, handles the transportation from the factory to the pier as well as the exportation and pays on behalf of A & A Trading Corporation all costs and charges including the factory or supplier's invoice, inland freight and insurance to dock, storage, petties, etc.; that in making up the invoice to A & A Trading Corporation the exact cost of each item has been shown on a per piece basis and all other costs and charges, such as, inland freight, insurance, storage were computed and listed on the same per piece basis; that all such costs

and charges are in fact the true cost and charges of the merchandise for which payment was received from A & A Trading Corporation; that no additional sums were received by A & A Japan, Ltd. from any manufacturer or supplier and the only amount it has received is the commission in accordance with the arrangement with A & A Trading Corporation; that such commission was not less than 1 per cent of the ex-factory price and averaged about 2 per cent of such price, that all charges and costs listed are true and correct and that the manufacturers or suppliers received no sums in excess of the amounts stated in the invoices.

The copy of the contract between A & A Trading Corp. (hereinafter called A & A New York) and A & A Japan, Ltd. (hereinafter called A & A Japan), bears the date May 1, 1961. The letterhead gives the address of A & A New York as 64–14 Woodside Avenue, Woodside 77, New York. Stamped thereon is a new address, 23–25 East 26th Street, New York, N. Y. 10010. Said contract provides that A & A Japan will act in the capacity of buying agent for A & A New York; that A & A New York will designate the articles to be purchased and will pay for them, and that A & A Japan is to receive a buying commission of not less than 2 percent and not exceeding 5 percent for the services rendered in connection with the placement of orders, checking and inspecting shipments and preparing the necessary documents. The contract also provides "at no time does A & A Japan, Ltd., act as a seller to A & A TRADING CORPORATION but at all times A & A Japan, Ltd., are buying agent of A & A Trading Corporation."

The sole witness at the trial was Mrs. Yoko Yamagata, vice president of A & A New York, who is in charge of the office during periods when her husband is away. She has been with the firm for about 13 years. She testified that 99 percent of the business of A & A New York consists of importing electronic

items from Japan and selling them to customers here. Purchases are made from about 70 or 80 manufacturers in Japan and sales are made in Metropolitan New York, Boston, Chicago, Indiana, and other places. According to the witness, A & A New York finds out what its customers may be interested in, procures prices and samples from various manufacturers in Japan, and on receipt of orders from customers, places the orders with Japanese manufacturers through A & A Japan.

Mrs. Yamagata produced typical quotations from manufacturers in Japan, which were received in evidence as collective exhibit 3. The first sheet consists of a pricelist dated October 23, 1963, from A & A Japan to A & A New York. It gives ex-factory f. o. b. and c. & f. prices for certain articles and states that the manufacturers are Nippon Sound Co., Ltd., and Sanyo Kogei Co., Ltd. The second sheet is a similar pricelist dated October 19, 1960, giving f. o. b. and c. & f. prices for certain merchandise manufactured by Nippon Sound Co., Ltd. No mention of commission is included on these pricelists.

Mrs. Yamagata also produced a copy of a typical order that her firm placed with Japan (exhibit 4). It is dated May 28, 1963, and is directed to Nippon Sound Co., Ltd., and lists A & A Japan, Ltd., Tokyo, Japan, as purchasing agent.

Mrs. Yamagata testified that her firm instructs A & A Japan to place orders and gives them the date of shipment and other details. In making payments a Letter of Credit is opened to A & A Japan. It is either assigned to the manufacturer or to A & A Japan, which draws the money and pays it to the manufacturer. The commission paid to A & A varies because of many factors, such as the size of the order, competition, and the services rendered.

Mrs. Yamagata stated that the agency agreement which is attached to exhibit 1 is still in effect; that the relations between A & A New York and A & A Japan have always been those of principal and agent and that A & A New York

never purchased any merchandise from A & A Japan.

During the course of the trial, the official papers were received in evidence without being marked. Mrs. Yamagata testified that the manufacturers listed thereon were ones with which her firm deals.

All but one of the special customs invoices included among the official papers list A & A Japan as the seller in one place and as the shipper in another, and A & A New York as the purchaser. On these it is also noted "we are not sellers in the home market." In the single exception, Trio Corporation is listed as the seller and the shipper.

Mrs. Yamagata testified that A & A Japan was listed as the seller because of confusion and misinformation. Although she admitted that A & A Japan was listed as seller on the invoices from 1962 through 1966, she said it was the buying agent.

Mrs. Yamagata testified that her husband has a controlling interest in A & A Japan and is half owner of A & A New York. As far as she knew, his brother, I. Yamagata, a vice president of A & A Japan, had no interest in the manufacturing companies listed in the invoice, nor had Mr. Takeda.

Mrs. Yamagata testified that the present address of A & A New York is 23–25 East 26th Street, and that the firm moved to that building in 1963. Prior to that it was in Woodside and prior to that at 1140 Broadway, New York, N. Y. Apparently, at the date of the contract attached to exhibit 1, the firm was located in Woodside, New York. The witness could not explain why the East 26th Street address appeared on the contract but said that the contract embodied her firm's agreement with A & A Japan which has been in existence for a long time.

Subsequently, this case was restored to the calendar for the purpose of taking testimony as to the discrepancy in dates.

Plaintiff offered in evidence another affidavit of H. Takeda (exhibit 5) in which he states that the agreement attached to his previous affidavit correctly represents the relationship between the two corporations; that in fact an agreement was entered into on May 1, 1961, between these two companies and that it was revised by mutual consent in the year 1963 to increase the minimum commission from 1 percent to 2 percent. This arrangement was made retroactive to the date of the original agreement, namely, May 1, 1961. Attached to the affidavit is a copy of a contract between A & A New York and A & A Japan dated May 1, 1961, giving the address of A & A New York as 1140 Broadway. The contract is similar to the one attached to Mr. Takeda's first affidavit except that the buying commission is to be not less than 1 percent and not exceeding 5 percent.

Mrs. Yamagata was recalled to the stand and produced the original buying agency agreement between A & A New York and A & A Japan dated May 1, 1961 (exhibit 6). She said she had signed it in 1961 at 1140 Broadway, and that it had been revised in 1963 when competition was more keen and A & A Japan felt that the 1 percent commission was not adequate. The only revision was to increase the minimum commission to 2 percent.

Mrs. Yamagata was asked whether it was not unusual to revise an agreement two years after the original and put down the date of the original contract. She testified:

A. Well if I were to make a contract today to revise it I would try to make it today, but actually if it is the same contract from May 1, 1961, I would think that even if my address is now 23–25 I could still date it May 1, 1961, if most of it is true.

Q. I am asking you a question.— A. Yes, I think more properly I would date it today.

Mrs. Yamagata testified that throughout the period of their relationship, A & A Japan has never acted in any other capacity than as buying agent for A & A New York, except that it does some market research for A & A New York.

She was shown the customs invoices attached to this particular appeal and stated that to the best of her knowledge the amount of buying agent's commission listed thereon were the amounts which A & A New York paid to A & A Japan. She did not produce any documents showing the payments made to A & A Japan for commissions, but said that A & A Japan drew on the Letters of Credit for payment.

 The issue here is a narrow one. Since the amounts of the alleged commissions were added to the appraised values, it is presumed that the appraiser found that they were not *bona fide* buying commissions. Hub Floral Mfg. Co. v. United States, 60 Cust.Ct. 905, R.D. 11544. The only issue, therefore, is whether plaintiff has established that they were such in fact and thus not properly part of the export value of the merchandise. United States v. Nelson Bead Co., 42 CCPA 175, C.A.D. 590; Stocker & Yale, Inc. v. United States, 60 Cust.Ct. 881, R.D. 11533. Whether a buying commission is *bona fide* depends on the facts in each case, the burden of proof resting upon plaintiff. Haddad & Sons, Inc. v. United States, 53 Cust.Ct. 423, R.D. 10825. That question has been before the court on many occasions.

In United States v. Gitkin Co., 46 Cust.Ct. 788, A.R.D. 132, the appraiser's return of value, as here, rested upon an implicit finding that the claimed buying agent was the seller. To substantiate its claim that a *bona fide* buying agency existed, plaintiff (Gitkin Co.) placed in evidence a copy of an agreement between it and Nosawa & Co., Ltd., whereby Gitkin retained Nosawa as its buying agent to make purchases on its behalf pursuant to its instructions, for which Nosawa was to receive a commission of 5 percent of the ex-factory price. The manager of Gitkin testified that Nosawa performed the duties required of it under the agreement. He explained that he had visited Japan on three occasions and a representative of Nosawa had taken him to the factories which produced the merchandise Gitkin was buying and

helped him to negotiate purchases. Nosawa then took care of the shipping details and made payments to the manufacturers. In two affidavits, Nosawa's managing director confirmed that at all times his company acted as a buying agent for Gitkin and had no interest in any of the Japanese factories with which it dealt. In addition there were affidavits of some of the manufacturers from whom the merchandise was purchased. On the record presented, it was held that the evidence sufficed to establish that Nosawa acted in the capacity of a *bona fide* purchasing agent whose commissions for services rendered were not to be included in the dutiable value of the merchandise.

In Hub Floral Mfg. Co. v. United States, supra, the evidence consisted of the testimony of one witness and a copy of an agreement reciting that Regent Export Co., Ltd. was to act in the capacity of an agent for Hub Floral Mfg. Co., was to receive a buying commission for its services, and was not to act as seller. The court stated as to the agreement:

This obviously is evidence that the parties intended to create the contract relationship of principal and agent. Whether this contract relationship prevailed in a particular transaction, calls for appropriate proofs. Acts may support, or they may cast doubt upon, the words which parties speak or reduce to writing. That is the nub of the requirement in reappraisement that a buying commission, to be excluded from value, shall be *bona fide*.

The witness, a partner in the plaintiff company, testified that he had visited Regent's showroom, saw samples of the merchandise, found the price satisfactory, arranged with Regent as to packing and details, and left it to Regent to follow through. He did not visit any factory, nor know who the maker of the merchandise was nor from whom he was buying, nor even whether Regent owned the merchandise. The court held that this evidence was not sufficient to establish *bona fides*; that the simple declaration of agency in the contract was not

sufficient. It distinguished the *Gitkin* case, pointing out that the testimony there spelled out in considerable detail the course of conduct that constituted the agency relationship and that the evidence showed that there were known sellers, distinct from the buying agent, with whom Gitkin negotiated.

In Morris Friedman v. United States, 52 Cust.Ct. 660, A.R.D. 178, there were in evidence agreements between the Hosho Corp. and the ultimate consignee designating the former as buying agent for the latter and stating that Hosho was to receive a buying commission for various services. The court noted from the acts of the parties that Hosho subsequently took the opposite position in its declarations on the consular invoices accompanying the entries, stating that it was the seller of the involved merchandise. The court concluded that such a *repudiation of the capacity on which it was claimed that the commission was paid* would justify a determination by an appraising officer that the commission was not, in fact, a *bona fide* buying commission, but an element of price which should be added to the dutiable value of the merchandise.

See also Daniel F. Young, Inc., et al. v. United States, 40 Cust.Ct. 860, Reap. Dec. 9173, application for review dismissed, 42 Cust.Ct. 770, A.R.D. 107, where, in spite of testimony as to the employment of an agent, the court held the alleged commission was in fact profit of the seller, on the ground that the declaration under oath on the consular invoices showed the alleged agent to be the seller.

In the instant case there are some facts tending to support plaintiff's claim that A & A Japan was its buying agent and some which do not.

According to the record there were written agreements dating from May 1, 1961 pursuant to which A & A Japan was to act in the capacity of buying agent for A & A New York, and was to perform the usual services of a buying agent and not to act as a seller. The copy which was attached to exhibit 1 was not the original agreement but a later revision which was also dated May 1, 1961, either through error or with an intention to make it retroactive. However, the original was produced at the trial and is in evidence as exhibit 6. The terms of the two are the same except for the minimum commission which was 1 percent in the original and 2 percent in the revision.

The affidavit of H. Takeda, managing director of A & A Japan, states that A & A Japan carried out its duties continuously from May 1, 1961, and that it received a commission of not less than 1 percent and on the average about 2 percent of ex-factory prices. Mrs. Yamagata also testified that A & A Japan was a buying agent and not the seller of the merchandise and that A & A New York purchased from more than 70 or 80 manufacturers in Japan. The agreement and the testimony tend to support the view that A & A Japan was a buying agent.

However, the testimony also shows that A & A New York and A & A Japan were under the common control of the Yamagata family. It has been held that the *bona fides* of a commission may well be questioned when the so-called commissionaire and the manufacturer are under common control of members of the same family or where the plaintiff and the alleged buying agent are under such common control. Fine Arts Bag Co. v. United States, 57 Cust.Ct. 625, R.D. 11224; Park Avenue Imports v. United States, 60 Cust.Ct. 750, R.D. 11468 (application for review pending).

In the instant case, as in the *Morris Friedman* case, *supra*, the parties, subsequent to the agreement and for a long period of time, listed A & A Japan as the seller on the special customs invoices. Mrs. Yamagata claimed that this was due to error or confusion, but her explanation is not convincing. She testified:

THE WITNESS: On this matter, I called the appraiser's house about 2 or 3 times and had lengthy conversations

and I was misinformed I would say now, that A & A—I explained to them that A & A Japan had been established as a buying agents [sic]. Their main operation is to act as our buying office but this gentleman at the appraiser's house told us that the buying commission is dutiable and we should list them as—we should consider them as sellers. That is the information we got, I called about three times and through the confusion, as you would note on some of our quotations, we listed ex-factory price; some of them we list fob prices because we were totally confused.

It is highly unlikely that firms doing a continuous exporting and importing business would not have made a further investigation as to the proper method of preparing invoices if, in fact, A & A Japan was the buying agent and not the seller.

One of the special customs invoices lists Trio Corp. as the seller and shipper. The attached invoice lists it also as the manufacturer and an amount is given for purchasing agents' commission. Whether or not A & A Japan is claimed to be the buying agent in that instance does not appear. These papers are some indication that where A & A Japan was the seller, it was so listed, but that where another corporation was the seller, its name was used.

Plaintiff's collective exhibit 3 is another indication that A & A Japan may well have been the seller. The two sheets contain the name A & A Japan, Ltd., in the upper lefthand corner, are headed "PRICE LIST" and are addressed to A & A New York. After the description of the merchandise and the prices, the name of the manufacturer is given. These papers lend credence to the view that A & A Japan was offering merchandise made by particular manufacturers to A & A New York at certain prices.

I note also the absence of any documents tending to show payment of commission to A & A Japan or the amounts thereof.

The acts of the parties referred to above cast doubt upon the agreement and the testimony purporting to establish A & A Japan as the buying agent of A & A New York.

In view of the discrepancies in the evidence, I find and hold that the record is insufficient to overcome the presumption of correctness attaching to the appraised value.

I therefore find as matters of fact:

1. That the merchandise involved in this case consists of various kinds of electronic components exported from Japan in January 1962.

2. That the merchandise does not appear on the Final List, promulgated by the Secretary of the Treasury, 93 Treas.Dec. 14, T.D. 54521.

3. That the merchandise was appraised on the basis of export value, as that value is defined in section 402(b) of the Tariff Act of 1930, as amended by the Customs Simplification Act of 1956.

4. That said merchandise was appraised at the invoice unit values plus the items marked "X" (inland freight, shipping charges and commissions) plus packing.

5. That the evidence presented is insufficient to establish the existence of a *bona fide* buying agency.

I conclude as matters of law:

1. That export value, as that value is defined in section 402(b) of the Tariff Act of 1930, as amended by the Customs Simplification Act of 1956, is the proper basis for the appraisement of the within merchandise.

2. That the statutory presumption of correctness attaching to the appraised values has not been overcome.

3. That the appraised values are the export values of the within merchandise.

Judgment will be entered accordingly.