(A.R.D. 276)

A & A Trading Corporation *v.* United States

Entry No. 23310.

Third Division, Appellate Term

(Decided October 5, 1970)

*Rode & Qualey (Ellsworth F. Qualey* of counsel) for the appellant.
*William D. Ruckelshaus,* Assistant Attorney General (*Herbert P. Larsen,* trial attorney), for the appellee.

Before RICHARDSON, LANDIS, and ROSENSTEIN, Judges; ROSENSTEIN, J., not participating

RICHARDSON, Judge: This application was filed by the importer seeking a review of the decision and judgment of the trial court, sitting in reappraisement, in *A & A Trading Corp.* v. *United States,* 62 Cust. Ct. 782, R.D. 11619, 295 F. Supp. 322 (1969), and holding that export value as appraised is the proper dutiable value of electronic components and electrical articles exported from Japan in 1962 and entered at the port of Boston, Massachusetts. The merchandise is not on the Final List promulgated by the Secretary of the Treasury in T.D. 54521, and was, therefore, appraised on the basis of export value as defined in 19 U.S.C.A., section 1401a(b) (section 402(b), Tariff Act of 1930, as amended by the Customs Simplification Act of 1956).

Appraisement was made at the invoiced unit values plus various items marked "X", one of which included an item designated as a purchasing agent's commission. The parties are in agreement that export value as defined in section 1401a(b) is the proper basis of value of said merchandise, that the appraisement was separable in nature, and that the only issue raised herein concerns the dutiability of the item designated as a purchasing agent's commission. Appellant, the plaintiff below, contended before the trial court and contends here under some five assignments of error that the item designated on the invoice as a purchasing agent's commission is in fact a *bona fide* buying commission, and therefore, nondutiable. And appellee contends throughout that the evidence is insufficient to establish the items in question as a *bona fide* buying commission.

The record consists of the testimony of Mrs. Yoko Yamagata, vice president of the appellant corporation, two affidavits of H. Takeda, managing director of A & A Japan, Ltd. (exhibits 1 and 5), the entry papers herein including commercial and special customs invoices (exhibit 2), quotations of prices under dates of October 19, 1960 and October 23, 1963 issued by A & A Japan, Ltd. under the heading "PRICE LIST" (collective exhibit 3), a purchase order issued by appellant corporation to Nippon Sound Co., Ltd. of Tokyo, Japan, under date of May 28, 1963, designating A & A Japan, Ltd. of Tokyo, Japan, as Purchasing Agent (exhibit 4), and a written agreement dated May 1, 1961, between appellant corporation and A & A Japan, Ltd. under which the latter becomes buying agent for the appellant for a commission of not less than 1% and not exceeding 5% (exhibit 6).

At the trial plaintiff offered into evidence the affidavit of H. Takeda, dated April 4, 1967, and received as exhibit 1. In exhibit 1 Mr. Takeda

states that his company has been the buying agent in Japan for A & A Trading Corporation for 11 years past; that his company furnishes A & A Trading with information as to prices for merchandise available in Japan and places orders on instructions from A & A Trading, inspects the merchandise, handles the transportation and exportation and pays the various costs and charges on behalf of A & A Trading, including, among other things, "the factory or supplier's invoice"; that such costs and charges are the true and correct costs and charges; that no additional sums were received by his company from manufacturers or suppliers nor did such manufacturers or suppliers receive any sums "in excess of the amounts stated in the invoices"; and that A & A Japan received only the agreed upon commission which "was not less than 1 per cent of the ex-factory price and averaged about 2 per cent of such price".

Attached to exhibit 1 is what purports to be a copy of a buying agency agreement dated May 1, 1961 between A & A Trading and A & A Japan in which it was stipulated, among other things, that A & A Japan was to receive a commission "of not less than 2% and not exceeding 5%". However, it developed during the course of the trial that the agreement attached to exhibit 1 was in actuality a "modification" in 1963 of an agreement executed between the parties on May 1, 1961. The terms of the 1961 agreement are contained in the original contract received in evidence as exhibit 6 and also in the copy annexed to the "explanatory" affidavit of Hiroshi Takeda dated October 25, 1967, and received in evidence as exhibit 5. The signature of H. Takeda on exhibit 1 and on the 1961 and 1963 agreements appears not to be similar to his signature on exhibit 5. The text of the May 1, 1961, agreement reads:

> It is agreed by and between A & A TRADING CORPORATION, 1140 Broadway, New York, N.Y., and A & A Japan, Ltd. (First Floor, Roppongi Bldg.) 18 Miwawadai-Machi, Minato-Ku, Tokyo, Japan, that A & A Japan, Ltd., act in the capacity of a buying agent for A & A TRADING CORPORATION.

> A & A TRADING CORPORATION specifically designate the articles to be purchased and that the articles are paid for by A & A TRADING CORPORATION. A & A Japan, Ltd., receive a buying commission of not less than 1% and not exceeding 5% for the services rendered in connection with the placement of orders, checking and inspecting shipments, preparing the necessary documents; and in addition, A & A Japan, Ltd. charge for inland freight, insurance premium, hauling and lighterages, storage and other incidentals, over and above the agreed ex-factory price. At no time does A & A Japan, Ltd., act as a seller to A & A TRADING CORPORATION but at all times A & A Japan, Ltd., are buying agent of A & A TRADING CORPORATION

> All merchandise has been purchased on the basis of ex-factory price, including casing and packing; and the buying commission

and the charges referred to above are in addition to the agreed ex-factory price.

This contract is to remain in force until cancelled in writing by either party.

The official entry papers including the customs invoices were received in evidence at the trial as collective exhibit 2. On three of four customs invoices A & A Japan is listed thereon as *seller* and in the declaration as *shipper*. The attached commercial invoices are on invoice forms of A & A Japan, which are subscribed for A & A Japan by H. Takeda, President. In the fourth customs invoice Trio Corporation is listed thereon as *seller* and in the declaration as *shipper*. And the attached commercial invoice is on the invoice form of Trio Corporation which is subscribed for Trio Corporation by H. Kasuga, Manager. All of the invoices reflect a C & F Boston price, although the breakdown shows both an FOB Yokohama price as well as an ex-factory price. And each of the commercial invoices shows a Purchasing Agent's commission. But it does not appear, *vis-a-vis* the terms of exhibit 1, on what basis and on what percentage the commission has been computed.

Mrs. Yamagata, the sole witness at the trial, testified, among other things, that she has been with the firm for about 13 years, that 99 percent of the business of A & A Trading consists of importing electronic items from Japan and selling them to customers here, and that purchases are made from about 70 or 80 manufacturers in Japan. With respect to the relationship existing between A & A Trading and A & A Japan it was brought out in the testimony of Mrs. Yamagata that her husband has a controlling interest in A & A Japan and is half owner of A & A Trading, and that A & A Japan's I. Yamagata is her husband's brother.

On the matter of the business dealings subsisting between A & A Trading and A & A Japan, Mrs. Yamagata testified on direct examination at the first hearing (R.7) :

Q. Now, will you describe briefly for the Court exactly how you do business in ordering or in selling merchandise and ordering it from Japan?—A. Well, first of all, we find what our customers would be interested in. We may visit them and get their requirements and then we would ask in Japan to find such mef-chandise [sic] from various manufacturers and they would send us prices and samples and should the customer like the item and the price, then we would get an order from them and then place the order with the manufacturer in Japan through A & A in Japan.

In this connection the witness identified the price lists received in evidence as exhibit 3 and the purchase order received in evidence as exhibit 4 as typical quotations and orders evidencing the method of

transacting business employed by the parties. However, none of this documentation is connected with the involved importation. Further, in this connection Mrs. Yamagata also testified (R.11–12) :

Q. In your relations with A & A of Japan, Ltd., Mrs. Yamagata, do you instruct that company to place the orders?—A. Yes, we do.

Q. Do you instruct them as to the date of the shipment and other details?—A. Yes, we do.

Q. In making payments to Japan, do you pay to A & A Japan or to the manufacturer?—A. We open a letter of credit to A & A Japan, which is assignable and depending on the requirements of the manufacturer, we either assign the letter of credit or let A & A Japan withdraw the money and pay it to the manufacturer.

And on cross-examination of the witness at the second hearing on this same subject, Mrs. Yamagata testified (R.37) :

Q. I refer you to your response to Mr. Qualey's last question when he asked you whether those were the amounts paid to A & A, Japan [referring to figures on the commercial invoices at bar]. Can you produce any copies of cancelled checks or any other documents that indicate payment that you made to that company for the so-called commission on that order?—A. All the transactions are conducted by letter of credits, where the invoices are submitted to the bank; they can draw money on this.

Q. Are not copies sent to you?—A. Yes, it is sent to us through the bank.

Q. And where are those copies?—A. They would be filed away.

Q. Did you bring them to Court with you?—A. No, but I believe this is one of the copies.

Q. But the other copies that your office received you do not have in Court with you?—A. No, I do not.

On the subject of A & A Japan's being listed on the invoices as *seller*, Mrs. Yamagata stated that this occurred as the result of confusion and misinformation in their dealings with the appraiser's office, and that although A & A Japan was listed as seller on the invoices from 1962 through 1966, that company was in actuality a buying agent (R. 14–20). The witness testified that throughout the period of their relationship A & A Japan has never acted in any other capacity than as buying agent for A & A Trading, except that it may do some market research for A & A Trading (R. 36).

The trial court, examining the evidence adduced upon the trial in relation to the principles of law relating to buying commissions, noted that the facts tended both to support and to militate against the existence of a buying agency between appellant and A & A Japan, including that in view of certain discrepancies in the evidence that the presumption of correctness of the appraisement had not been overcome. With respect to the discrepancies the trial court stated (pages 789–790) :

However, the testimony also shows that A & A New York and A & A Japan were under the common control of the Yamagata family. It has been held that the *bona fides* of a commission may well be questioned when the so-called commissionaire and the manufacturer are under common control of members of the same family or where the plaintiff and the alleged buying agent are under such common control. *Fine Arts Bag Co.* v. *United States*, 57 Cust. Ct. 625, R.D. 11224; *Park Avenue Imports* v. *United States*, 60 Cust. Ct. 750, R.D. 11468 (application for review pending).

In the instant case, as in the *Morris Friedman* case, *supra*, the parties, subsequent to the agreement and for a long period of time, listed A & A Japan as the seller on the special customs invoices. Mrs. Yamagata claimed that this was due to error or confusion, but her explanation is not convincing. . . .

\* \* \* \* \* \* \*

It is highly unlikely that firms doing a continuous exporting and importing business would not have made a further investigation as to the proper method of preparing invoices, if, in fact, A & A Japan was the buying agent and not the seller.

One of the special customs invoices lists Trio Corp. as the seller and shipper. The attached invoice lists it also as the manufacturer and an amount is given for purchasing agents' commission. Whether or not A & A Japan is claimed to be the buying agent in that instance does not appear. These papers are some indication that where A & A Japan was the seller, it was so listed, but that where another corporation was the seller, its name was used.

Plaintiff's collective exhibit 3 is another indication that A & A Japan may well have been the seller. The two sheets contain the name A & A Japan, Ltd., in the upper lefthand corner, are headed "Price List" and are addressed to A & A New York. After the description of the merchandise and the prices, the name of the manufacturer is given. These papers lend credence to the view that A & A Japan was offering merchandise made by particular manufacturers to A & A New York at certain prices.

I note also the absence of any documents tending to show payment of commission to A & A Japan or the amounts thereof.

The acts of the parties referred to above cast doubt upon the agreement and the testimony purporting to establish A & A Japan as the buying agent of A & A New York.

In its brief submitted before us appellant calls attention, among other things, to the fact that the *Park Avenue Imports* case, which was relied upon by the trial court for support of the proposition that the common control of a principal and an agent presents an occasion for questioning the *bona fides* of the relationship, was reversed on application for review in *Park Avenue Imports* v. *United*

*States*, 62 Cust. Ct. 1035, A.R.D. 255 (1969). While this fact is true, it does not appear that the trial court's disposition of the case was predicated solely upon this ground. And so, without passing upon whether or not we agree with the trial court or with the Appellate Term, Second Division, on this point, we move to a consideration of the other circumstances in the case affecting the *bona fides* of the claimed agency relationship.

On the matter of the designation of A & A Japan as *seller* on the customs invoices, appellant suggests that the explanation given therefor by the witness Yamagata at the trial in the light of Customs Bureau requirements and practice should make a difference in the assessment of this particular usage here. But this argument, it seems to us, borders on speculation. There is nothing of record to indicate that Customs Bureau requirements with respect to the use of the purchase form of invoice compelled A & A Japan to designate itself rather than the manufacturers as *seller* on the customs invoices at bar if the facts were otherwise. We think that the character of this designation is consistent with the other factors pointed out by the trial court as noted herein leading to the conclusion that A & A Japan was acting as *seller* in the transaction at bar.

But apart from the matter of the customs invoice treatment *vis-a-vis* the Trio Corporation invoice, and the A & A Japan "PRICE LIST" described in exhibit 3 to which the trial court made reference and with whose conclusion thereon we are in accord, there is the matter of the paucity of documentation supporting the claimed buying agency. The trial court took note of the absence of documents tending to show payment of commission to A & A Japan or the amounts thereof. But more than that, there is the total lack of documentation in this record that would operate to transform the executory buying agency agreement depicted in exhibit 6 into a fully performed agency obligation culminating in the transaction at bar.

In this context it is not a matter of searching the record for corroborating evidence supporting other evidence in the record. It is a question of the *best evidence* or no evidence. It is clearly established in the testimony of the witness Yamagata and the affidavit of Mr. Takeda (exhibit 1) that the transaction at bar was consummated by means of written documents, i.e., a written purchase order to the manufacturer or manufacturers followed by a manufacturer's or supplier's invoice against which payment was made through a letter of credit. And yet, with the exception of the Trio Corporation invoice, none of these important documents or copies thereof were produced at the trial or introduced into evidence to prove the existence of and implementation of the buying agency in the transaction at bar. Nor was the absence of the documents accounted for within the contemplation of

law so as to permit of usage of secondary evidence of their contents. Consequently, the lack of such documentation fully entitles the court to conclude that they were nonexistent insofar as the instant transaction is concerned.

Hence, there exists in the case no evidence that the manufacturers or suppliers involved recognized the so-called commissionaire A & A Japan as the representative of the appellant and dealt with that firm as such. *Cf. B & W Wholesale Co., Inc.* v. *United States*, 63 Cust. Ct. 691, A.R.D. 262, decided Nov. 3, 1969. On this record the trial court was correct in its assessment of the evidence at bar, and there is substantial evidence to support its decision.

For the reasons stated we agree with the findings of fact and conclusions of law of the trial court which we adopt, and affirm the decision and judgment of that court.

Judgment will be entered herein accordingly.