G. R. BOLTON, INC., and James G. Wiley Co.

v.

UNITED STATES.

R.D. 11644; Reappraisement R67/3851.

United States Customs Court.

March 24, 1969.

Glad & Tuttle, Los Angeles, Cal., (Edward N. Glad, Los Angeles, Cal., of counsel), for plaintiffs.

William D. Ruckelshaus, Asst. Atty. Gen., (Owen J. Rader, New York City, trial attorney), for defendant.

WILSON, Judge:

This reappraisement appeal concerns an importation by G. R. Bolton, Inc., hereinafter designated Bolton, of certain artificial flowers consisting of plastic garlands and leaves. The merchandise involved was exported from Hong Kong by Rayman Trading Co., Ltd., hereinafter called Rayman, on August 31, 1965. The importations here involved were entered at Los Angeles, California, by customhouse brokers James G. Wiley Co. Rayman is alleged to be a buying agent for Bolton. The merchandise was manufactured in Hong Kong, as shown by the invoice in evidence by plaintiffs as part of the official court file, without being marked, by Ng Chow Ind. Co., Ltd., as to item invoiced as #B–915; by Champion Plastic Mfg. Co., Ltd., as to item invoiced as #B–832, and by Chiang Shing Pl. Fty. as to item invoiced as #B–8503.

The merchandise was "appraised at invoiced unit values, plus charges marked (x), pkd," which are indicated as "Inland freight" of $8.47 and "Agent buying comm. 5%" of $30.57.

The importer does *not* contend that the inland freight should be nondutiable, but does claim that the 5 percent "buying commission paid to Rayman * * * did not inure to the benefit of the seller, and therefore is not part of the dutiable value * * *." The plaintiffs also contend that the appraisement is divisible (separable) and that the only issue is "whether or not the buying commission as invoiced at 5 per cent is part of dutiable value." To this proposition defendant's counsel agrees. The defendant contends that plaintiffs have failed to estab-

lish the existence of a *bona fide* nondutiable buying commission.

Counsel stipulated that the merchandise does not appear on the so-called Final List, 93 T.D. 14, T.D. 54521, published by the Secretary of the Treasury, and that the statutory basis for appraisement should be export value as defined in section 402(b) of the Tariff Act of 1930, as amended by the Customs Simplification Act of 1956, 91 Treas.Dec. 295, T.D. 54165, which is the basis adopted by the appraiser.

The above-amended tariff act considered herein is as follows:

(b) EXPORT VALUE.—For the purposes of this section, the export value of imported merchandise shall be the price, at the time of exportation to the United States of the merchandise undergoing appraisement, at which such or similar merchandise is freely sold or, in the absence of sales, offered for sale in the principal markets of the country of exportation, in the usual wholesale quantities and in the ordinary course of trade, for exportation to the United States, plus, when not included in such price, the cost of all containers and coverings of whatever nature and all other expenses incidental to placing the merchandise in condition, packed ready for shipment to the United States.

The plaintiffs introduced the oral evidence of Mr. G. R. Bolton, president of G. R. Bolton, Inc. A thermofax copy of an alleged buying agency agreement dated January 1, 1963 between Rayman and Corsillo Enterprises, Inc., the predecessor of G. R. Bolton, Inc., and hereinafter referred to as Corsillo, was received in evidence as plaintiffs' exhibit 1, and an affidavit by Mr. Bing Ying Au, hereinafter referred to as Mr. Au, president of Rayman since 1948, sworn to on December 18, 1967, was received as plaintiffs' exhibit 2. The defendant's evidence consists of three certified reports by Customs Representative Perry J. Spanos from Hong Kong, dated January 28, 1966, February 4, 1966, and August 22, 1966, marked and received in evidence

respectively as defendant's exhibits A, B and C.

The evidence of the parties will be discussed in more detail hereinafter as deemed essential.

■■ As the appraisement was made at unit invoice values, plus charges for inland freight (which is not in issue), and the alleged agent's buying commission, and as plaintiffs contend only that said commission is nondutiable, the appraisement is severable and the unchallenged unit invoice values and inland freight are presumed to be correct. United States v. Chadwick-Miller Importers, Inc., et al., 54 CCPA 93, C.A.D. 914. Furthermore, the appraiser's finding of value is presumptively correct. 28 U.S. C.A., section 2633. The disputed item covering the alleged buying commission also must stand unless affirmatively shown to be nondutiable. Haddad & Sons, Inc. v. United States, 54 Cust.Ct. 600, 602, 603, Reap.Dec. 10942, affirmed 56 Cust.Ct. 792, A.R.D. 205.

■ It is therefore plaintiffs' burden herein to establish by satisfactory competent proof that a *bona fide* buying agency existed between Bolton and Rayman if the alleged 5 percent buying commission as invoiced is to be held to be nondutiable as a matter of law. Knit Wits (Wiley) et al. v. United States, 59 Cust.Ct. 753, R.D. 11401; B & W Wholesale Co., Inc. v. United States, 58 Cust. Ct. 728, R.D. 11311 (application for review pending).

The oral testimony of Mr. Bolton is to the effect that Corsillo Enterprises, Inc., was the predecessor in name of G. R. Bolton, Inc., the former being a family name (Emil Corsillo). Mr. Corsillo was Bolton's uncle-in-law. The witness was vice-president of the Corsillo firm from 1953 for about 6 years, and then became president of the Bolton company when the firm name was changed about three and a half years prior to the date of trial herein (February 1968). For about 7 or 8 years prior to date of trial, artificial flowers were imported from Hong Kong. The alleged agreement, exhibit

1, between Corsillo and Rayman is dated January 1, 1963. In exhibit 2, Mr. Au's affidavit, he alleges that Rayman acts as buying agent for Bolton. It is therefore a reasonable assumption that Rayman and Bolton were attempting to act in pursuance of the above agreement, which provided for appointment of Rayman as buying agent in Hong Kong and for payment of 5 percent "commission against ex-factory price." By the agreement Rayman was to visit manufacturers, collect and submit samples to Corsillo, and place orders with manufacturers only upon written instructions. He was also to inspect merchandise and arrange shipment.

█ Whether a buying commission is *bona fide* depends upon the facts in each case. United States v. Bauer et al., 3 Ct. Cust.Appls. 343, 345, T.D. ˙32627. In United States v. Nelson Bead Co., 42 CCPA 175, 176, C.A.D. 590, the court stated that commissionaires must represent purchasers only and must be paid by said purchasers. The manufacturers must recognize the alleged buying agents as representatives of the purchasers. It must appear that said agents "are not retained either directly or indirectly by the manufacturers, nor do they (the alleged buying agents) receive from the latter any fee or other compensation."

The evidence given by Mr. Bolton under cross-examination discloses that Mr. Rayman's prices are relied upon by Bolton; that Bolton has no way of knowing the precise price that the manufacturer has quoted to Rayman, and that purchase orders do not show the name of the manufacturer. Mr. Au, the president of Rayman, in his statement to a customs agent, exhibit A, informed the customs representative that Rayman is financially interrelated with Ng Chow Industries Co., Ltd., which is the firm that manufactured item #B915 involved herein; that Rayman keeps over 500,000 Hong Kong dollars "always tied up in financing several of the factories by making advance payments so that the factories may purchase the required raw material and meet other operating expenses." Ex-

hibit A also asserts that Mr. Au stated that "merchandise is re-invoiced to the U.S. importers at prices higher than actually purchased from the factories and that the U.S. customers 'naturally' do not know the exact factory cost price." Mr. Au estimated that his profit varied from 3 to 7 percent and that on some items the profit is higher than others depending on market conditions and prevailing competition. He also stated that prices on all merchandise are always negotiated, and that the artificial flowers were bought and sold on f. o. b. basis; that 95 percent of the factories he uses do not attempt to sell directly to the United States because of language difficulty, the need for financial assistance prior to payment, and lack of contacts with overseas buyers.

The customs representative examined several transactions of shipments to various United States importers and stated "In every instance, I found Rayman Trading buys at lower prices than re-invoicing to U. S. customers, and that a 2% discount is given by all manufacturers to Rayman Trading which is not passed on to the U. S. importers. As a rule, the profit realized by Rayman Trading on such transactions varies from 5 to 14 percent, depending on the items."

The customs representative states in exhibit A that the various agency agreements signed by Rayman and United States importers according to information developed during the inquiry "are not valid in that Rayman Trading realizes a higher margin of profit from such transactions that [sic] the agreed 'buying commission'. "

The reports of the customs representatives, exhibits A, B, and C, are *all* dated in *1966*, whereas the importers' appeal for reappraisement was filed on January 12, 1967. In Fine Arts Bag Co. v. United States, 57 Cust.Ct. 625, 632, R.D. 11224, the court stated, "It is evident, however, that investigation by agents before the start of litigation will command much more confidence than one that comes later." [Emphasis supplied.] Plaintiffs' exhibit 2 is sworn to on De-

cember 18, 1967, which is more than 11 months after litigation was commenced, and merits less confidence than exhibit A. This is especially so for the reason that the affiant in exhibit 2 was interviewed by the customs representative prior to litigation. The report (exhibit A) quotes many statements made by Mr. Au.

Plaintiffs' brief states that defendant apparently questions whether Rayman is a *bona fide* buying agent because "unknown to the importer herein [Rayman] also received a benefit from the seller *in addition* to the 5 percent commission paid by the plaintiffs." [Emphasis copied.] The brief cites from the case of Lollytogs, Ltd. v. United States, 55 Cust. Ct. 608, 614, Reap.Dec. 11073. The court there stated that there was no need to consider the price received by the seller and that the portion of the price which is credited to the seller is of no moment. The court concluded that as the percentage "added by the appraiser reflected a *bona fide* purchasing commission paid to an agent who acted on behalf of the plaintiff in connection with its purchases of the merchandise here involved, it follows that such commission was not a part of the export value of such merchandise." [Emphasis copied.]

The cited *Lollytogs* case is different in essential facts from the facts in the case at bar. Not present in the cited case are many ramifications in the case at bar not ordinarily present in *bona fide* buying agent relationships, such as to bargaining price; reinvoicing at higher prices than purchased prices; f. o. b. sales pattern of ordinary course of business in the exporting country; profit received by Rayman; Rayman's advancement of monies to several manufacturers (500,-000 Hong Kong dollars always being tied up); extra discounts paid to Rayman; Rayman's financial interrelationship with one of the manufacturers of the imported plastic flowers as well as that "agency agreements" "are not valid in that Rayman Trading realizes a higher margin of profit from such transactions that [sic] the agreed 'buying commission'."

The facts herein are somewhat similar to facts in United States v. Ferdinand Rice et al., 4 Cust.Ct. 813, Reap.Dec. 4886, reversing Ferdinand Rice v. United States, 3 Cust.Ct. 526, Reap.Dec. 4623. The appellate court held on the record that sales by manufacturers to Cooper Findlay & Co., Ltd., represented a foreign value transaction, while the transaction between the latter firm and the importer represented an export value transaction. The export value was the higher value, which is the value adopted by the appraiser in said cited case. It should be followed herein.

Moreover, *here* the question is *not* the price received by the manufacturer but the amount actually received by Rayman from the manufacturer, which was unknown by Bolton, *and* from plaintiffs herein. It is also of record that Hong Kong manufacturers did not or could not deal directly with United States purchasers because of language difficulties or for other reasons, thus precluding a price at which the merchandise could be sold at the manufacturers level to a United States purchaser at an, ex-factory or an f. o. b. price. Therefore, the sales prices by the manufacturers to Rayman were primary sales, while Rayman included the alleged commission and special discounts in the prices at which Rayman reshipped to plaintiffs. Note Fine Arts Bag Co. v. United States, 56 Cust.Ct. 597, Reap.Dec. 11128. Furthermore, in Lollytogs, Ltd., *supra*, the importer dealt directly with the manfacturers, which is not the fact on the record in the case at bar.

A finding that Rayman acted *only* in the capacity of a commissionaire or buying agent for Bolton, on the facts in this case, would require supplying elements from imagination of which proofs are here lacking. This may not be done by the court. United States v. Malhame & Co., 19 CCPA 164, 171, T.D. 45276. Under the circumstances described herein as shown by the record, the importer has failed to establish the existence of a *bona fide* agency between Bolton and Rayman. Accordingly, the plaintiffs have failed to make a *prima facie* case

that the 5 percent buying commission as invoiced is not part of the dutiable value. The presumptively appraised value stands. 28 U.S.C.A. section 2633; Brooks Paper Company v. United States, 40 CCPA 38, C.A.D. 495, citing cases; Kobe Import Co. v. United States, 42 CCPA 194, C.A.D. 593.

Accordingly, on the record herein, the court finds as facts:

1. That the imported merchandise consists of artificial flowers of plastic garlands and leaves exported from Hong Kong by Rayman Trading Co., Ltd., on August 31, 1965, which merchandise was manufactured by Ng Chow industries Co., Ltd., as to item invoiced as #B-915; by Champion Plastic Mfg. Co., Ltd., as to item invoiced as #B-832, and by Chiang Shing Pl.Fty. as to item invoiced as #B-8503.

2. The merchandise was imported by G. R. Bolton, Inc., of Los Angeles, California, and entered by James G. Wiley Co., customhouse brokers.

3. The merchandise does not appear on the final list, 93 Treas.Dec. 14, T.D. 54521, published by the Secretary of the Treasury.

4. Appraisement was on the basis of export value as defined in section 402(b) of the Tariff Act of 1930, as amended by the Customs Simplification Act of 1956, 91 Treas.Dec. 295, T.D. 54165, at the invoiced, unit values, plus inland freight of $8.47, plus alleged invoiced agent's commission of 5 percent or $30.57.

5. The importer contests only the invoiced agent's commission of Rayman Trading Co., Ltd., claiming that it is not a part of the dutiable export value, and that said Rayman Trading Co., Ltd., was a *bona fide* buying agent for G. R. Bolton, Inc.

6. That the record does not establish the correctness of the importer's contentions set forth in the preceding finding of fact.

As conclusions of law, on the record, the court holds:

1. That the imported merchandise is subject to appraisement on the basis of export value as defined in section 402(b) of the Tariff Act of 1930, as amended by the Customs Simplification Act of 1956, 91 Treas.Dec. 295, T.D. 54165.

2. The importer has failed to make out a *prima facie* case sufficient to overcome the presumptively correct appraised values.

3. The appraised values, on the basis of export value, *supra*, remain in full force and effect.

Judgment will be entered accordingly.