(A.R.D. 263)

UNITED STATES *v.* MANHATTAN NOVELTY CORP.

Entry No. 817735.

Third Division, Appellate Term

(Decided December 4, 1969)

*William D. Ruckelshaus*, Assistant Attorney General (*Bernard J. Babb*, trial attorney), for the appellant.

*Lane, Young & Fox* (*James G. McGoldrick* of counsel) for the appellee.

Before RICHARDSON, LANDIS, and ROSENSTEIN, Judges

ROSENSTEIN, Judge: This is an application for review of a decision and judgment sustaining the importer's claim and holding that there was a *bona fide* buying commission of 5 per cent which was not a part of the dutiable value of the subject merchandise. *Manhattan Novelty Corp.* v. *United States*, 60 Cust. Ct. 824, R.D. 11510 (1968), on rehearing from *Id.* v. *Id.*, 54 Cust. Ct. 528, R.D. 10906 (1965).

The merchandise consists of transistor radios exported from Japan on or about September 30, 1960 and appraised on the basis of export value as defined in section 402(b), Tariff Act of 1930, as amended by the Customs Simplification Act of 1956, T.D. 54165.

The basis of appraisement is not in issue. Appellant challenges the trial judge's finding of a *bona fide* buying commission, but does not dispute his holding that the appraisement is separable and that the importer could rely upon the presumption of correctness attaching to the appraiser's return with respect to all elements of appraisement except the item contested. See *United States* v. *Knit Wits (Wiley) et al.*, 62 Cust. Ct. 1008, A.R.D. 251, 296 F. Supp. 949 (1969).

At the trial the official papers were received in evidence without being marked. Mr. Nathan Flomenhaft, president of appellee, testified that Pacific Sales Corporation (hereinafter called Pacific) had acted as a buying agent for his firm since 1958 or 1959; that his company had an agency agreement with Pacific, dated Tokyo, September 20, 1960, signed by himself and Mr. K. Okamura, president of Pacific; that he was not present when it was signed by Okamura in Tokyo, but received it through the mail. The witness' last visit to Japan was in May or June, 1960.

The agreement, received in evidence as plaintiff's exhibit 1, reads as follows:

### AGREEMENT

Tokyo: September 20, 1960

This is to confirm our understanding as follows:

A. Manhattan Novelty Corp., hereby appoints PACIFIC SALES CORPORATION as one of their buying agents in Japan.

B. PACIFIC SALES CORPORATION, must visit manufacturers in Japan, collect samples, submit these samples to Manhattan Novelty Corporation, quoting prices at which the merchandise can be purchased.

C. PACIFIC SALES CORPORATION, will quote prices at F.O.B., Japanese port in U.S. Dollars, which shall always include their buying commission.

D. Upon instructions from Manhattan Novelty Corp., PACIFIC SALES CORPORATION will place order with manufacturers, inspect merchandise and arrange shipment.

E. MANHATTAN NOVELTY CORPORATION, will pay 7½% buying commission for merchandise bought through PACIFIC SALES CORPORATION against first cost.

F. Manhattan Novelty Corp., will pay the other expenses such as packing, inland freight to port, insurance to steamer, storage, hauling and lighterage, etc.

G. This contract is to remain in force until cancellation in writing is submitted by either party.

Mr. Flomenhaft explained that the invoices list a 5 per cent commission, although the agreement called for one of 7½ per cent; as the item was a very competitive one, Pacific had agreed verbally to work for a smaller commission.

The trial court, in R.D. 10906, held the appraisement to be separable, but concluded upon the record made therein—

 * * * There is no evidence to establish that, in this instance, Pacific Sales Corp. followed the procedures outlined in the

agreement, nor is there any evidence to establish the fact that Pacific Sales Corp. did not act as seller of its own merchandise or that no payment was made by the manufacturer to Pacific Sales Corp.

Accordingly, the evidence is insufficient to establish that a *bona fide* buying commission arrangement existed between the parties. Plaintiff has, therefore, failed to overcome the presumption of correctness attaching to the action of the appraiser.

Subsequently, the decision and judgment were set aside and the case restored for all purposes in *Id.* v. *Id.*, 54 Cust. Ct. 636, R.D. 10964 (1965).

On rehearing, an affidavit of K. Susumu Okamura, Pacific's president, dated September 30, 1965, was received in evidence as plaintiff's exhibit 2. He stated therein that—

On September 20, 1960, PACIFIC SALES CORPORATION entered into an agreement with MANHATTAN NOVELTY CORPORATION, by the terms of which PACIFIC SALES CORPORATION agreed to act as a buying agent in Japan for MANHATTAN NOVELTY CORPORATION of New York, New York, U.S.A. and in connection therewith to visit manufacturers in Japan; collect and submit samples to MANHATTAN NOVELTY CORPORATION together with prices and terms of sale; inspect the merchandise prior to shipment; obtain and prepare all necessary documents; and arrange for shipment to MANHATTAN NOVELTY CORPORATION in New York, New York, U.S.A., for all of which PACIFIC SALES CORPORATION would receive a buying commission of 7½% calculated upon the first cost or ex-factory price.

The affidavit recited further that Pacific complied with all the terms of the agreement and acted solely as a buying agent for the importer in connection with the instant transaction; that in view of market conditions the company agreed verbally to reduce its buying commission from 7½ per cent of the ex-factory price; that no part of the commission was paid to the manufacturer of the radios, nor did the manufacturer pay anything to Pacific in connection with the purchase of the merchandise; and that Pacific did not own or sell the involved radios for its own account.

The trial judge held that the importer had sustained its burden of proof, and that Pacific "not only appears to be a *bona fide* buying agent but has, to my satisfaction, complied with the terms of the agreement." The evidence also established, the trial court held, that no part of the purchase price inured to the benefit of the commissionaire and that the radios were not owned by Pacific.

The sole issue before us is whether the trial judge correctly determined that a *bona fide* buying agency existed, and that the 5 per cent commission was not properly a part of the dutiable export value of the merchandise.

A *bona fide* buying commission charged for handling merchandise is not a part of dutiable value. *United States* v. *Nelson Bead Co.*, 42 CCPA 175, C.A.D. 590 (1955). A commission paid by the purchaser to an agent for services rendered in procuring the merchandise, inspecting it, arranging for shipment and payment for account of the buyer, no part of which commission inures to the seller, is a buying commission. *United States* v. *Nelson Bead Co., supra; Carolina Mfg. Co.* v. *United States*, 62 Cust. Ct. 850, R.D. 11640 (1969). The commissionaire performs the duties of an agent acting on behalf of its principal, the buyer: it may not act as an independent seller, nor as a representative of the manufacturer. *B & W Wholesale Co., Inc.* v. *United States*, 63 Cust. Ct. 691, A.R.D. 262 (1969) ; *Lollytogs, Ltd.* v. *United States*, 55 Cust. Ct. 608, R.D. 11703 (1965).

Whether a commission is a *bona fide* buying commission depends in each instance on the facts of each particular case *United States* v. *Knit Wits (Wiley) et al., supra; A & A Trading Corp.* v. *United States*, 62 Cust. Ct. 782, R.D. 11619, 295 F. Supp. 322 (1969) (application for review pending). The bedrock upon which the *bona fides* are based is the establishment of the buying agency relationship with respect to the subject transaction. As Judge Donlon commented, in *Hub Floral Mfg. Co.* v. *United States*, 60 Cust. Ct. 905, R.D. 11544 (1968), with regard to a buying agency agreement proffered in support of a claimed buying commission:

> This obviously is evidence that the parties intended to create the contract relationship of principal and agent. Whether this contract relationship prevailed in a particular transaction, calls for appropriate proofs. Acts may support, or they may cast doubt upon, the words which parties speak or reduce to writing. That is the nub of the requirement in reappraisement that a buying commission, to be excluded from value, shall be *bona fide*.

As the appraiser's finding of value is presumptively correct, 28 U.S.C. 2633, and his inclusion of the alleged buying commission in the dutiable value of the merchandise must stand unless affirmatively shown to be nondutiable, it was appellee's burden to establish by satisfactory competent proof that a *bona fide* buying agency existed between Pacific and Manhattan Novelty. *G.R. Bolton, Inc., James G. Wiley Co.* v. *United States*, 62 Cust. Ct. 868, R.D. 11644, 297 F. Supp. 1385 (1969).

Upon reviewing the record at bar, we find ourselves unable to subscribe to the views of the trial judge: the record leaves unsettled and beclouded the nature of the relationship between the importer and Pacific in connection with the purchase of the subject radios. The official papers simply do not jibe with the proofs adduced by appellee,

revealing discrepancies which, unaccounted for, compel the conclusion that it has failed to establish a *bona fide* buying agency relationship.

The special customs invoice, prepared by Pacific and signed by its president, K. Okamura, lists the date of acceptance by Pacific of the order herein as September 10, 1960, some ten days *prior* to the date of the buying agency agreement in evidence.* Furthermore, Pacific designates itself thereon as "Seller". The paper accompanying this invoice (also prepared by Pacific) refers to Wako Bussan Co., Ltd. as "Maker" and again describes Pacific as "Seller". It contains the statement, "Drawn under Letter of Credit of Manufacturers Trust Company No. 108995 dated July 15, 1960".

The commercial invoice, prepared under the letterhead of "Pacific Sales Corporation, Exporters & Manufacturer's Agent", is dated October 3, 1960. It describes the goods, lists the charges (including a 5 per cent buying commission), refers to the July 15, 1960 letter of credit, and is signed by K. Okamura for Pacific.

These documents raise questions which have not been answered. The papers show that there was a firm order for the purchase of radios which was accepted by Pacific, payment for which was guaranteed under a letter of credit. Appellee maintains that its agreement of September 20, 1960 established the relationship of principal and agent with respect to this purchase. But there is no testimony in the record that the agency agreement was intended to be retroactive in effect or that it in any way delineated the posture of the parties some ten days prior thereto.

The contention of counsel for appellee that the agreement was "* * * a confirmation of an existing relationship * * *" is not supported by the record which in no wise indicates that the agreement was a memorandum of the terms of a prior existing oral agreement. The sole testimony on this point was as follows (R.5) :

> Q. And how long have they been your buying agents?—A. We started with them in 1959 or 1958.

> Q. Are they still acting; do you still do business with them on and off?—A. Yes, we still do business with them.

> Q. Did you have any arrangements with the Pacific Sales Corporation as to payment or compensation for their services?— A. Yes, we had an agency agreement with Pacific Sales, Mr. Okamura.

> Q. And I show you a paper writing dated Tokyo, September 20, 1960, and ask you if that is the agreement you referred to?—A. Yes, that is the agreement as a buying agent for us.

We also note that the affidavit of K. Susumu Okamura, set out in part hereinabove, fails to refer to an earlier association with Man-

---

*The discrepancy in the dates was noted for the first time at the oral argument on appeal.

hattan Novelty, or to suggest that the agreement reduced to writing a prior understanding.

Nor can we read such an understanding into a contract which "hereby appoints Pacific" as a buying agent, and which relates only to acts *in futuro*, i.e., Pacific Sales Corporation *"will* quote prices", *"will* place order", *"will* pay 7½% buying commission", and *"will* pay the other expenses".

A finding that the contractual arrangement of September 20, 1960 established the status of the parties on September 10, 1960 would require supplying from imagination the essentials in which the proofs are deficient. This may not be done by the court. *United States* v. *Malhame & Co.*, 19 CCPA 164, T.D. 45276 (1931); *G.R. Bolton, Inc., James G. Wiley Co.* v. *United States, supra.*

Furthermore, the record fails *in toto* to explain why Pacific listed itself as seller on the customs invoice signed by its president and again on the attached sheet which gives the details of the sale if it were, in fact, the buying agent and not the seller.

As noted, *supra*, Pacific describes itself as "Exporters & Manufacturer's Agent". Thus, it functions as an agent for manufacturers in addition to its activities as a buying agent. It must be assumed that a businessman would know in what capacity he was acting in a particular transaction and how to fill out the necessary forms in connection therewith. It does not appear that Pacific (Okamura) was a novice in these dealings. Furthermore, the averments contained in Okamura's affidavit (prepared five years after the event) as to the buying agency fail to explain his earlier contradictory statements on documents which were contemporaneous with the transaction.

Where the official papers accompanying an entry unequivocally set out a relationship between two parties which is subsequently disclaimed by them, this court has looked askance at such later allegations in the absence of clear and convincing proof that the statements made at time of entry were erroneous.

In *Morris Friedman* v. *United States*, 52 Cust. Ct. 660, A.R.D. 178 (1964), there were in evidence buying agency agreements designating Hosho Corp. as buying agent for the ultimate consignees. The court observed that the position taken by Hosho in the agreements was directly the opposite of that taken on the consular invoices accompanying the involved entries wherein it was listed as the seller of the merchandise, and concluded that—

> * * * Such a repudiation of the capacity in which it is claimed that the commission was paid would justify a determination by an appraising officer that the commission was not, in fact, a *bona fide* buying commission, but an element of price which should be added to the value of the merchandise. *United States* v. *Herrman*, 91 F. 116.

In *A & A Trading Corp.* v. *United States, supra,* the plaintiff and A. & A. Japan, Ltd. entered into a buying agency arrangement with the latter appointed as buying agent. Subsequent to the agreement and for a long period of time, the parties listed A. & A. Japan as the seller on the special customs invoices. Chief Judge Rao commented thereon:

> It is highly unlikely that firms doing a continuous exporting and importing business would not have made a further investigation as to the proper method of preparing invoices if, in fact, A. & A. Japan was the buying agent and not the seller.

The court also noted the absence of any documents tending to show payments of commissions to A. & A. Japan or the amounts thereof.

In *Daniel F. Young, Inc., et al.* v. *United States,* 40 Cust. Ct. 860, R.D. 9173 (1958), application for review dismissed 42 Cust. Ct. 770, A.R.D. 107 (1959), an affidavit of the alleged buying agent was received in evidence stating that he had acted as agent for the importer and that, for services performed in connection with the purchase of the merchandise, he was to receive a 5 per cent commission. The court noted that the declaration under oath appearing on the consular invoices showed the alleged buying agent to be the seller, and stated that, in such cases, the alleged commissions were in fact profit of the seller and might not be considered as deductible items. It also observed that the record contained no proof with respect to alleged payments for commissions.

At the oral argument on appeal herein, when queried as to the circumstances under which the commission provided for in the agreement of September 20 was reduced to 5 per cent and as to how it could have applied to merchandise ordered ten days earlier, counsel for appellee replied with candor (R.26):

> Well, I can only say this, that the record is unclear on what took place on that point, and during that course. * * *

We also note the absence of any documents showing payment of a buying commission to Pacific.

Appellee asserts (brief, p. 6) that the issue before this court is the "character" of the services rendered by Pacific in connection with the shipment at bar. Indeed, it is the "character" of these services which remains shrouded in ambiguity. We find that the record fails to overcome the presumptively correct finding of the appraiser and to establish that Pacific was a *bona fide* buying agent with respect to the transaction herein. The commission, therefore, is properly a part of dutiable value.

This court, therefore, makes the following findings of fact:

1. That the involved merchandise consists of transistor radios exported from Japan on or about September 30, 1960.

2. That the merchandise is not included on the final list published by the Secretary of the Treasury, 93 Treas. Dec. 14, T.D. 54521.

3. That said merchandise was appraised on the basis of export value as defined in section 402(b) of the Tariff Act of 1930, as amended by the Customs Simplification Act of 1956, at the invoice unit price plus a buying commission, export packing charges, and shipping charges.

4. That appellee has failed to overcome the presumption of correctness attaching to the action of the appraiser, having failed to prove that the item designated on the invoice as "buying commission" represents a *bona fide* buying commission.

This court, therefore, concludes as matters of law:

1. That the involved merchandise is properly dutiable on the basis of export value as defined in section 402(b) of the Tariff Act of 1930, as amended by the Customs Simplification Act of 1956.

2. That such value is the appraised value.

3. That the judgment of the trial court is reversed.

Judgment will be entered accordingly.