(R.D. 11723)

ANTHONY A. TORO ET AL. *v.* UNITED STATES

Entry Nos. M–1797–A, etc.

(Decided October 12, 1970)

*Lane, French, Primm, Lane & Carrier* (*Leon G. Nichols* of counsel) for the plaintiffs.

*William D. Ruckelshaus*, Assistant Attorney General (*Peter Jay Baskin*, trial attorney), for the defendant.

RAO, Chief Judge: The merchandise involved in these appeals for reappraisement, consolidated at the trial consists of different models of Klystron electronic tubes imported from Japan on various dates in the years 1962 through 1966.

The merchandise does not appear on the Final List published by the Secretary of the Treasury, 93 Treas. Dec. 14, T.D. 54521, and was appraised on the basis of export value, as that value is defined in section 402(b) of the Tariff Act of 1930, as amended by the Customs Simplification Act of 1956, at various unit values shown on the invoices in red ink. It is claimed that the merchandise should properly be appraised

on the basis of export value as defined in section 402(b), *supra*, at different values, approximately 10 percent lower than the appraised values.

The record consists of the testimony of two witnesses, Anthony A. Toro, customhouse broker, and Geoffrey A. S. Roberts, president of Oki Electronics of America, Inc., formerly known as Butler Roberts, and five exhibits introduced into evidence by plaintiffs.

It appears from the record that the merchandise was imported by Oki Electronics of America, Inc. (hereinafter called Oki of America), from Oki Electric Industry Company, Limited of Japan (hereinafter called Oki of Japan). The former is a partially owned subsidiary of the latter. It is the only outlet of Oki of Japan in the United States.

A so-called price list was received in evidence as exhibit 1. It is in the form of a letter to Mr. Roberts of Oki of America from Oki of Japan and was subscribed to by H. Yasuda, Chief of the Export Department, and sworn to before the American Vice-Consul in Tokyo. It states, *inter alia:*·

> In order to provide Oki Electronics of America, Inc., and its wholly owned subsidiary, Butler Roberts Associates, Inc., with a basic price structure covering its acquisition cost, FOB factory Japan, of millimeter wave radio tubes, the following is submitted as a firm quotation covering standard production tubes with performance characteristics equal to the typical characteristics advertised in our literature describing these products.
>
> \*  \*  \*  \*  \*  \*  \*
>
> The quotation which follows indicates single unit prices for quantities of less than ten standard performance tubes ordered at one time, as well as unit prices for similar tubes ordered in quantities of ten tubes or more at one time. Quantities of ten or more have for many years been considered wholesale quantities due to the lower production cost of manufacturing the larger quantity necessary to obtain a yield of ten good tubes.

The exhibit includes a list of prices for various models of Klystron tubes in quantities of 1 to 9 and in quantities of 10 or more.

The merchandise involved herein was generally appraised at the prices listed for quantities of 1 to 9 but plaintiffs claim that the prices for quantities of 10 or more are applicable.

When asked whether 10 or more was the usual wholesale quantity in which the merchandise was sold by Oki of Japan, Mr. Roberts testified:

> We are dealing with a rather unusual product. The term "wholesale" has never been used insofar as with our relationship with Oki is concerned. It is the quantity at which the first reduction in cost becomes evident, and the quantity of 10 or more has

been utilized by Oki Electric to establish the point at which a discount will commence.

The reason for the reduction in price, according to both the witnesses, is that because of the nature of the tubes, if the factory receives an order for one tube, it cannot produce just one tube. At least 10 to 15 units must be attempted in order to guarantee one tube meeting specifications. Where 10 or more are ordered, proportionately less have to be manufactured. Mr. Roberts explained:

> Now, if the factory received from us an order for 40 or 50 tubes combining several types, they do not make up a single batch of these oxides. They will make up maybe a half a dozen batches of them under different ambient conditions and humidity, and it is perfectly possible that within those half a dozen batches of chemicals one batch will be exceptional, in that it has a higher yield, a higher degree of acceptance than if you were to just produce one batch of chemicals, and then you can take that one batch out of 6, 7 or 8 batches, and use that material for 15, 20 or 30 tubes. It is the law of averages going to work for you.

Mr. Toro testified that the price charged by Oki of Japan is based on the number of tubes ordered, not the number actually received by Oki of America. Mr. Roberts stated that the same prices were offered to buyers in Japan as were offered to Oki of America. He cited one instance in which Boeing Aircraft purchased directly from the manufacturer in Japan and paid the same prices as Oki of America. That sale was apparently unusual as Mr. Roberts stated that Oki of Japan did not knowingly sell to others than Oki of America in the United States.

The issue here, as framed by the parties, is whether the usual wholesale quantity in which this merchandise was freely sold for exportation to the United States was less than 10 tubes, as contended by the Government, or 10 or more tubes, as claimed by plaintiffs.

Export value is defined in section 402(b) of the Tariff Act of 1930, as amended, as the price at which such or similar merchandise is freely sold or, in the absence of sales, offered for sale in the usual wholesale quantities and in the ordinary course of trade, for exportation to the United States, plus, when not included, the cost of containers and packing. The term "usual wholesale quantities" is defined in section 402(f)(5) as follows:

> (5) The term "usual wholesale quantities", in any case in which the merchandise in respect of which value is being determined is sold in the market under consideration at different prices for different quantities, means the quantities in which such merchandise is there sold at the price or prices for one quantity in an aggregate volume which is greater than the aggregate volume sold at the price or prices for any other quantity.

In the instant case it appears that the merchandise was being sold or offered for sale at different prices for different quantities but no evidence has been presented to establish that the merchandise was sold in an aggregate volume for one quantity which was greater than the aggregate volume for another quantity. Plaintiffs are apparently contending that quantities under 10 are retail quantities and that the only wholesale quantity is 10 or more. *United States* v. *Fisher Scientific Company*, 40 CCPA 164, C.A.D. 513 (1953), is cited in support of this theory.

That case was controlled by a different statute than that here involved. Furthermore, there was evidence that the manufacturer had two prices, retail and wholesale, and that any purchaser paid retail prices for one to four balances and wholesale prices for five or more. A list of transactions was presented to the court, some of which were denominated "Retail Transactions" and were disregarded by the court in determining usual wholesale quantities.

Here the record does not establish that one quantity was retail and the other wholesale, as those terms are normally understood. While there is a statement in exhibit 1 that quantities of 10 or more have been considered wholesale quantities, there is no statement that sales in lesser quantities were retail sales. The price list itself makes no distinction between retail and wholesale, and, according to the testimony of Mr. Roberts, the term "wholesale" was never used. An examination of the invoices involved herein indicates that Oki of America, which purchased for resale to others, sometimes bought in quantities of less than 10 and paid the higher prices and sometimes bought in quantities of 10 or more and paid the lower prices. Sales of goods for resale are sales in wholesale quantities and are to be considered in determining "usual wholesale quantities." *Jenkins Brothers* v. *United States*, 25 CCPA 90, T.D. 49093 (1937) ; *United States* v. *Semon Bache & Co.*, 25 CCPA 387, T.D. 49466 (1938).

Since the appraisements were made generally at the prices quoted for quantities of one to nine, it is presumed that the appraising officer found such quantities to be the usual wholesale quantities. In order for plaintiffs to prevail they must show the aggregate volume of merchandise sold in quantities of less than 10 and the aggregate volume of merchandise sold in quantities of 10 or more, thus enabling the court to determine in which quantity the greater aggregate volume was sold. Not having done so, the appeals must fail. *Independent Cordage Co., Inc.* v. *United States*, 59 Cust. Ct. 718, 723–724, R.D. 11380 (1967), aff'd 63 Cust. Ct. 699, A.R.D. 259, 302 F. Supp. 1335 (1969) ; *F. B. Vandegrift & Co.* v. *United States*, 60 Cust. Ct. 965, 968–969, A.R.D. 239 (1968), aff'd 56 CCPA 105, C.A.D. 962 (1969).

On the record presented, I find as facts:

1. That the merchandise involved in these appeals for reappraisement consists of different models of Klystron electronic tubes imported from Japan on various dates in the years 1962 through 1966.

2. That said merchandise does not appear on the Final List published by the Secretary of the Treasury, 93 Treas. Dec. 14, T.D. 54521, pursuant to the Customs Simplification Act of 1956.

3. That the merchandise was appraised on the basis of export value, as that value is defined in section 402(b) of the Tariff Act of 1930, as amended by the Customs Simplification Act of 1956, at various unit values shown on the invoices in red ink.

4. That it is claimed that the merchandise should be appraised on the basis of export value, as so defined, at different values, said to be the values at which the merchandise was sold or offered for sale in the usual wholesale quantities of 10 or more.

5. That the evidence fails to show the aggregate volume of merchandise sold in quantities of less than 10 and the aggregate volume of merchandise sold in quantities of 10 or more, or that sales in the latter quantity were greater in aggregate volume.

I conclude as matters of law:

1. That export value, as that value is defined in section 402(b) of the Tariff Act of 1930, as amended by the Customs Simplification Act of 1956, is the proper basis for the determination of the value of the merchandise involved herein.

2. That a quantity of 10 or more Klystron electronic tubes has not been established to be the usual wholesale quantity, as defined in section 402(f)(5) of the Tariff Act of 1930, as amended.

3. That since no other values have been established, the appraised values must be sustained.

Judgment will be entered accordingly.