(R.D. 11753)

DORCO IMPORTS *v.* UNITED STATES

Entry No. 29401.

(Decided November 24, 1971)

*Glad & Tuttle* (*George R. Tuttle, Jr.*, of counsel) for the plaintiff.

*L. Patrick Gray, III*, Assistant Attorney General (*Robert E. Burke* and *John A. Gussow*, trial attorneys), for the defendant.

WILSON, Judge: This appeal for reappraisement involves the proper appraised value of certain ladies' vinyl handbags manufactured in Japan and exported to the United States. The merchandise was appraised on the basis of export value as defined in section 402(b) of the Tariff Act of 1930, as amended by the Customs Simplification Act of 1956, T.D. 54165, at the ex-factory invoice unit price of $2,301.48 plus certain shipping charges, inland freight charges and other charges. To the appraised value was also added an alleged buying commission of $230.15.

There is no issue raised herein as to the proper basis of appraisement. The only question involved is whether the amount of $230.15, alleged by the plaintiff to have been paid as a buying commission to Yashiro Company, Inc., an agent in Japan, was properly added to the appraised value. In other words, the sole question is whether the amount of $230.15 was a *bona fide* buying commission paid by the plaintiff to its alleged Japanese agent. Note: *G. R. Bolton, Inc., James G. Wiley Co.* v. *United States*, 62 Cust. Ct. 868, R.D. 11644, 297 F. Supp. 1385 (1969); *B & W Wholesale Co., Inc.* v. *United States*, 63 Cust. Ct. 691, A.R.D. 262 (1969), aff'd, 58 CCPA 92, C.A.D. 1010 (1971); and *United States* v. *Manhattan Novelty Corp.*, 63 Cust. Ct. 699, A.R.D. 263 (1969).

It is conceded that the appraisement herein is separable so that the plaintiff may rely upon the presumption of correctness relating to all items included in the appraised value except the alleged buying commission.

It is the contention of the plaintiff that the Yashiro Company, Inc. was a *bona fide* buying agent acting on behalf of the plaintiff, Dorco Imports, in the purchase of the merchandise involved in this appeal, and that for its services as such agent, Yashiro Company, Inc., was paid by the plaintiff 10 percent of $2,301.48 or a buying commission of $230.15.

The only evidence presented in the case consists of the oral testimony given in open court by Morris Dorshkind, president of the plaintiff corporation, Dorco Imports, and two written exhibits. Plaintiff's exhibit 1 consists of an affidavit by one H. Takada to which is attached an alleged agreement between Yashiro Company, Inc., and the plaintiff, Dorco Imports, therein identified as exhibit A. These documents were received in evidence over the defendant's objection. Defendant offered no oral testimony but offered in evidence as defend-

ant's exhibit A a purported photostatic copy of a letterhead of Yashiro Company, Inc. The letter itself was not offered in evidence. This exhibit was received in evidence over the objection of the plaintiff.

It is deemed unnecessary to include in this opinion a quotation of section 402(b) of the Tariff Act of 1930, as amended, since it is conceded that the merchandise involved was properly appraised under the provisions of said section.

Defendant's sole contention, the only point argued in its brief, is that "plaintiff has failed to discharge its burden of proving through credible evidence, that Yashiro was its *bona fide* buying agent with respect to the subject merchandise." In support of this position, defendant argues that plaintiff's exhibit 1 was inadmissible and that its receipt in evidence by the court was erroneous, and further contends that even though plaintiff's exhibit 1 was properly received into evidence, plaintiff's proof as a whole fails to establish that Yashiro Company, Inc., was indeed a *bona fide* buying agent for the plaintiff. Of course it is the law as provided in section 2633 of Title 28 of the United States Code that "The value found by the appraiser shall be presumed to be the value of the merchandise. The burden shall rest upon the party who challenges its correctness to prove otherwise."

Turning now to the question of the admissibility of plaintiff's exhibit 1 consisting of an affidavit with an attached agreement, let us consider defendant's argument against the admissibility of said documents. The only part of defendant's argument deserving consideration is that the said exhibit 1 with the agreement attached was inadmissible because it admittedly consists not of the original agreement but of a photostatic copy. The defendant makes the untenable claim that the letterhead upon which the agreement is written constitutes part of the contract and that there is evidence of fradulent tampering with the original contract because apparently certain words following Yashiro Company, Inc., on the letterhead have been blocked out. It should be pointed out that the letterhead above the affidavit, exhibit 1, shows no evidence of anything being blocked out and that all it says with reference to the name is "Yashiro Company, Inc." with the company address and certain other information on the upper right hand corner.

In support of its position that the affidavit and agreement, exhibit 1, should have been excluded from consideration, the defendant cites the case of *Toho Bussan Kaisha, Ltd.* v. *American President Lines, Ltd.*, 265 F.2d 418, 423, 424 (1959). Said case is cited as authority that exhibit 1 was improperly admitted in evidence in violation of the best evidence rule. I am of the opinion, however, that the *Toho Bussan* case should be limited to the facts of that particular case and that it is not applicable to the situation now before the court. As pointed out by

Chief Judge Clark in his dissenting opinion in the *Toho* case, the majority opinion lost sight of the real situation. Said Judge Clark (at page 425) :

"* * * Here to sustain the result we are turning back the use of ordinary business practices in court in rejecting photostat copies of books of account duly verified by the testimony of a live witness. And so an inequitable decision is upheld by an evidence ruling out of keeping with modern business life.

"* * * It is to be noted that the trial judge rejected the photostats not in the exercise of some 'discretion' as to their falsity, as the opinion suggests, but because he held copies inadmissible— a decision erroneous according to modern standards, as the opinion concedes. * * *"

In the majority opinion in the *Toho Bussan* case, the court attempts to distinguish the case of *United States* v. *Manton*, 107 F.2d 834 (1938). In the *Manton* case the court stated (at page 845) :

"* * * And if it appear, as it does here, that what is called the secondary evidence is clearly equal in probative value to what is called the primary proof, and that fraud or imposition, reasonably, is not to be feared, the reason upon which the best evidence rule rests ceases, with the consequence that in that situation the rule itself must cease to be applicable, in consonance with the well established maxim—cessante ratione legis, cessat ipsa lex.

"An over-technical and strained application of the best evidence rule serves only to hamper the inquiry without at all advancing the cause of truth. * * *"

In the *Bussan* case the court points out that in the case before it there is danger of fraud and imposition in the use of photostats. In the case now before the court, there is no evidence of fraud by any stretch of the imagination although that point is labored somewhat in the argument of the defendant, based wholly on the contention that something appears to be blocked out of the letterhead on which the agreement is written. The letterhead constitutes no part of the agreement and should not be considered in the decision of this case. It might be pointed out that the words on the letterhead of defendant's exhibit A—Manufacturers and Exporters—do not appear on the letterhead upon which the affidavit is written, neither is there any evidence that the letterhead above the affidavit has never had any words blocked out or if so, what words. The court sees no merit whatever in the defendant's contention relating to the alleged alteration of the letterhead which constitutes no proper part of any of the instruments before the court. The court is of the opinion that defendant's exhibit A was improperly admitted into evidence because it has no relevancy to the documents in question. It should be observed that even if the Yashiro Company, Inc., did manufacture merchandise, it could still serve as agent for someone else. The only

evidence on the question establishes that Yashiro Company, Inc., was not a manufacturer. See oral testimony of Mr. Dorshkind. (R. 8.) Also affidavit (pl. ex. 1).

In the *Bussan case*, the court in its majority opinion referring to the case of *United States* v. *Manton, supra*, stated (at page 424):

> "We fully endorse the position there taken. But in cases such as this there are dangers of 'fraud' and 'imposition' in the use of photostats prepared specifically for trial and not made in the regular course of business. The Trial Judge, recognizing these dangers, properly refused to admit the photostats in the exercise of his discretion. We cannot now say that this discretion was abused."

The *Manton* case, *supra*, appears to be a leading case on the question of the admission of photostatic copies of instruments. I therefore quote the following from that opinion (pages 844–845):

> "The trial court over objection admitted in evidence what are called recordak facsimiles of checks. The objection made to this ruling of the court is that such facsimiles do not constitute the best evidence. These recordaks are photostatic reproductions of the face of checks which have been paid; and they were offered as evidence of such payments. It is argued that the original checks themselves were the best evidence and that their absence should have been accounted for as a prerequisite to the admission of the recordaks. With this contention we cannot agree. These recordaks are made and kept among the records of many banks in due course of business and are within the words of 28 U.S.C. § 695, 28 U.S.C. § 695.[2] Their accuracy is not questioned. They represent, in the course of a year, perhaps millions of transactions. No one at all familiar with bank routine would hesitate to accept them as practically conclusive evidence. As proof of payment, they constitute not secondary but primary evidence.
>
> "But putting all this aside, the best evidence rule should not be pushed beyond the reason upon which it rests. It should be 'so applied', as the Supreme Court held in an early case, 'as to promote the ends of justice, and guard against fraud or imposition.' Renner v. Bank of Columbia, 9 Wheat. 581, 597, 6 L.Ed. 166. See Also United States v. Reyburn, 6 Pet. 352, 366, 8 L.Ed. 424; Minor v. Tillotson, 7 Pet. 99, 100, 8 L.Ed. 621. The rule is not based upon the view that the so-called secondary evidence is not competent, since, if the best evidence is shown to be unobtainable, secondary evidence at once becomes admissible. And

---

"[2] In any court of the United States and in any court established by Act of Congress, any writing or record, whether in the form of an entry in a book or otherwise, made as a memorandum or record of any act, transaction, occurrence, or event, shall be admissible as evidence of said act, transaction, occurrence, or event, if it shall appear that it was made in the regular course of any business, and that it was the regular course of such business to make such memorandum or record at the time of such act, transaction, occurrence, or event or within a reasonable time thereafter. All other circumstances of the making of such writing or record, including lack of personal knowledge by the entrant or maker, may be shown to affect its weight, but they shall not affect its admissibility. The term 'business' shall include business, profession, occupation, and calling of every kind."

if it appear, as it does here, that what is called the secondary evidence is clearly equal in probative value to what is called the primary proof, and that fraud or imposition, reasonably, is not to be feared, the reason upon which the best evidence rule rests ceases, with the consequence that in that situation the rule itself must cease to be applicable, in consonance with the well established maxim-cessante ratione legis, cessat ipsa lex.

"An over-technical and strained application of the best evidence rule serves only to hamper the inquiry without at all advancing the cause of truth. 'The fundamental basis,' the Supreme Court has said, 'upon which all rules of evidence must rest—if they are to rest upon reason—is their adaptation to the successful development of the truth.' Funk v. United States, 290 U.S. 371, 372, 381, 54 S.Ct. 212, 215, 78 L.Ed. 369. There is not the slightest reason to suspect that this fundamental basis was affected in the present instance."

In the case of *Pacific Brokerage Co.* v. *United States*, 3 Cust. Ct. 20, C.D. 193 (1939) at page 23 the court held as follows:

"The Government tendered a photostatic copy of a letter and asked the writer thereof if that was his signature, after which, and with no other testimony concerning the same, the Government attorney offered the letter in evidence. It was rejected because it was a photostatic copy. We know of no rule of evidence which renders photostatic copies, when properly identified, inadmissible. In this case the writer of the document recognized and acknowledged his signature, whereupon, if it were competent evidence to prove any issue, it should have been received. * * * "

The witness Dorshkind identified the signature on exhibit 1. Concerning the photostatic copy of the agreement in plaintiff's exhibit 1, Mr. Dorshkind testified (R. 8–9) as follows:

Q. I show you Plaintiff's Exhibit 1 for identification, Mr. Dorshkind, and ask if you have seen that document before trial?—A. Yes.

Q. Are you familiar with it?—A. Yes, I am.

Q. I direct your attention to the exhibit attached to the affidavit. Have you seen that document before?—A. Yes, I have.

Q. Do you recognize the signatures on that document?—A. Yes.

Q. Does your signature appear there?—A. On the right side, M. Dorshkind; correct.

Q. What is the signature on the other side?—A. That would be Mr. Yamaguchi.

Q. Do you recognize Mr. Yamaguchi's signature?—A. Yes, I do.

Q. Have you personally met Mr. Yamaguchi?—A. Yes.

Q. Have you received correspondence from him?—A. Yes.

Q. Do you also recognize Mr. Takada's signature?—A. Yes, I do.

Q. Have you received correspondence signed by him?—A. Yes.

Q. Is this the agreement under which you have done business?—A. Correct.

The court is therefore of the opinion that the photostatic copy, and therefore all of exhibit 1, was properly admitted in evidence. The question then resolves itself into the issue of whether the plaintiff's evidence, oral and documentary, is sufficient to sustain the burden of proof resting upon the plaintiff. In other words, does the plaintiff's evidence show that the alleged buying commission was in fact and law a *bona fide* buying commission and that the amount of the commission, i.e. $230.15, was improperly included in the appraised value of the merchandise in question?

Mr. Dorshkind, president of the plaintiff corporation, in his oral evidence before the court testified (R. 5–8) as follows:

Q. And what are your duties and responsibilities?—A. Purchasing and marketing products purchased in Japan.

Q. Does that include the placement of purchase orders?—A. Yes, it does.

Q. The payment for the merchandise and supervision?—A. All of those duties, correct.

Q. How long has your company been engaged in the importing business?—A. Since 1963.

\*  \*  \*  \*  \*  \*  \*

Q. Did you travel in connection with this business?—A. Yes, I did.

Q. And where have you travelled?—A. The Orient; Japan and Hong Kong.

Q. How often do you travel there, approximately?—A. About twice a year.

Q. With what company did you initially do business with when you went into the Orient?—A. Our first contact was with Nosawa & Company.

Q. And after that?—A. After that I contacted the Yashiro Company.

Q. And how did you initially arrange for that; what happened?—A. I learned that Yashiro was quite a successful agent doing a lot of good work in our line, and I contacted them and arranged for them to act as our agent to make purchases for our account.

Q. When did this occur?—A. In 1964.

\*  \*  \*  \*  \*  \*  \*

Q. And do you recall who you met at that time?—A. Mr. Takada.

Q. Had you continued to do business with this company?—A. Yes, we have.

Q. Have you been to their place of business?—A. I was to their office, yes.

Q. And what did you observe at their office?—A. Well, the usual Japanese type office with desks and tables, secretaries, and business equipment.

Q. Was this in an office building?—A. Yes.

Q. Would you describe briefly how you transact business with this company?—A. Mainly through our carrying samples that we wish countered. In some cases, we would air samples for countering work. Most of our work would run along the creation of counter samples that would fit our trade, and we would hand-carry them or mail them over and ask for counters.

Q. Then what?—A. Well, we would give them our particular needs as far as styling, coloring, and price range and then counter samples would be submitted. If they were satisfactory, we would approve them for them to make us purchases for their account.

JUDGE WILSON: Did they manufacture, this particular company?

THE WITNESS: No, they do not.

In substance the affidavit of H. Takada, forming part of plaintiff's exhibit 1, states that he has been the director of Yashiro Company, Inc., since 1960. He further deposes that his firm acts as a "buying agent for various importers by placing orders when so instructed by the principle [sic], making shipping arrangements for the principle [sic], inspecting the merchandise prior to shipment and preparing all the necessary documents." The affiant further states that he is in charge of and supervises the activities of his firm which involves the entering into buying agency agreements, placing of orders, preparing of invoices, etc. The affiant further states that his firm, Yashiro Company, Inc., first had a written agreement with Dorco Imports in San Francisco on September 20, 1964 and that a photostatic copy of that agreement is attached to the affidavit. He also states that his firm never does business for its own account but only places orders upon instructions from its principals such as Dorco Imports. The agreement between Yashiro Company, Inc., and Dorco Imports states that Yashiro Company, Inc., is to act in the capacity of agent for Dorco Imports. This agreement then states:

"Dorco Imports specifically designates the articles to be purchased and that the articles are paid for by Dorco Imports, Yashiro Company, Inc. receives a buying commission of 10% for the services rendered in connection with placement of order, and inspecting shipment, preparing the necessary documents and in addition, the Yashiro Company, Inc. charges for Inland Freight, Insurance Premium, Hauling and Lighterages, storages and other incidentals, over and above the agreed Ex-factory price.

"Yashiro Company, Inc. does not act as a seller to Dorco Imports, but acts as a buying agent for Dorco Imports.

"All merchandise is purchased on the basis of an Ex-factory price including packing and casing, and that the buying commission and the charges rendered to above are in addition to the agreed Ex-factory price."

These are ordinary and usual services performed by purchasing agents for American firms. NOTE: *Vicki Enterprises, Inc., et al.* v. *United States*, 67 Cust. Ct. 480, R.D. 11750 (September 10, 1971), application for review pending, and *Bushnell International, Inc.* v. *United States*, 67 Cust. Ct. 588, A.R.D. 297 (September 16, 1971).

The strong supporting affidavit of H. Takada, together with the attached agreement, in the absence of any testimony by defendant, is sufficient to establish that the buying commission was paid by the plaintiff to Yashiro Company, Inc., and as claimed by the plaintiff is not properly a part of the appraised value of the imported merchandise.

The court therefore makes the following

## FINDINGS OF FACT

1. That the merchandise herein consists of ladies' vinyl handbags purchased by Yashiro Company, Inc., a buying agent of the plaintiff, from King Manufacturing Company of Osaka, Japan, at an ex-factory price and exported to the United States on or about the 3d day of October 1965 to the plaintiff company, Dorco Imports, and entered at San Francisco, California on the 2d day of November 1965.

2. That said merchandise was appraised at the invoice unit values totaling $2,301.48 plus 10 percent paid by the plaintiff to Yashiro Company, Inc., plus shipping charges of $120, inland freight of $40 and other charges of $17.73.

3. That the 10 percent commission was a *bona fide* buying commission paid by Dorco Imports to its buying agent, Yashiro Company, Inc.

4. That the appraised value found by the appraiser is correct except as to the buying commission of $230.15.

## CONCLUSIONS OF LAW

As conclusions of law, the court finds that Yashiro Company, Inc., was a *bona fide* buying agent of the plaintiff and as such purchased the merchandise in question.

That the appraised value as found by the appraiser is correct and should be upheld except as to the buying commission of $230.15 which is a *bona fide* buying commission and constitutes no proper part of the appraised value of the imported merchandise and judgment will be entered accordingly.